JACKSON, *ex dem.* WHITE, *against* ANN CARY.

*In a deed of bargain and sale, the use can be limited to no other person than the bargainee, in whom alone the legal estate can be executed; and, therefore, if A. bargain and sell to B. and C., his wife, in fee, in trust for the heirs of B. on the body of C. begotten, or to be begotten, the legal estate vests in the bargainees, and passes after the death of B. to C. his wife, and not to the heirs of B. begotten on the body of C., whose interest is of a kind which can only be enforced in equity; and as, in an action of ejectment, the legal title merely is regarded, a grantee of one of the heirs cannot recover against the wife and survivor.*

*Where the wife has a perfect title to land, and a deed of the same land is, afterwards, executed by a third person to her and her husband, and accepted by them, this does not preclude her from set-*ting up her original title, nor is she bound by any limitations or trusts in the deed.

*The parol declarations of a person having title to land, are inadmissible as evidence to defeat that title; it being contrary to the statute of frauds.*

THIS was an action of ejectment brought to recover an undivided eighth part of about six thousand acres of land in the county of *Otsego.* The cause was tried before Mr. J. *Platt,* at the *Otsego* circuit, in *June,* 1818.

The premises in question were part of a patent granted to *George Croghan,* and ninety-nine others, for 100,000 acres of land. The other proprietors released to *Croghan,* who, by deed dated *March* 2, 1770, conveyed the premises to *Augustine Prevost ;* and *Augustine Prevost* and wife, by deed, dated *June* 29, 1771, conveyed the same to *Cornelius P. Low,* who died about the year 1791, leaving the defendant his only child and heir at law.

The plaintiff founded his claim upon a deed dated the 20th of *October,* 1790, from *Helena Kip,* widow, and sole devisee of *Henry Kip,* deceased, and *Henry H. Kip,* to *Richard Cary* the elder, and the defendant *Ann,* his wife. This deed was expressed to be given for the consideration of 425*l.* and granted to the parties of the second part, (being in their possession by virtue of a bargain and sale bearing date the day before, and by force of the statute, &c.) a tract of 6,060 acres formerly conveyed by *G. Croghan* to *A. Prevost,* and lately conveyed by the sheriff of *Montgomery* to *Henry Kip,* deceased, and *Henry H. Kip,* to have and to hold the same unto the said parties of the second part, their heirs and assigns, to the only proper use and behoof of the said parties of the second part, their heirs and assigns : " In trust, nevertheless, to and for the only proper use of the heirs of him, the said *Richard Cary,* party hereto, on the body of her the said *Ann,* the wife of the said *Richard Cary,* for ever, whether the same are already begotten or to be begotten ; provided always, and this trust is upon this condition, nevertheless, that it shall and

may be lawful to and for the said *Richard Cary* and *Ann* NEW-YORK,
*Cary* to grant, bargain, sell, alien, release and convey unto May, 1819.
*Edward Hurtin,* of *Stonington,* in *Connecticut,* his heirs and JACKSON
assigns, a farm containing 300 acres of land, &c., and also v.
to let out in leases, renewable from time to time, or to grant, CARY.
bargain, sell, alien, release, and convey in fee simple, by
mortgage, or otherwise, to any person or persons, a quan-
tity of the above released premises, not exceeding 3,000
acres of land, including the aforesaid and described farm of
300 acres of land, and out of such sale or sales to pay and
retain to their own use the sum of 425*l.* lawful money
aforesaid, the consideration money above mentioned, paid
by them out of their own proper money, and the interest
thereof, together with all costs and charges, as may arise or
happen, by reason or means of such sale or sales ; and the
overplus money to have and to hold in trust, to and for the
use of their heirs, as before limited and expressed."

*Richard Cary,* the grantee, came on the premises as early
as the year 1790 or 1791, and within one or two years af-
terwards, removed his family there, and continued to occupy
the premises until his death, which happened ten or twelve
years before the trial, and the defendant has ever since re-
mained in possession. *Cary* the elder, the grantee in the
last mentioned deed, left *Richard Cary,* the younger, and
seven other children ; and *Richard Cary,* the younger, by
deed, dated the 14th of *April,* 1809, conveyed to the plain-
tiff's lessor and one *Seelye,* all his right and interest, being
one eighth part of the premises in question. In *May,* 1810,
*Seelye* released all his interest to the lessor of the plaintiff.

A witness testified, that both before and after the deed
from *R. Cary* the younger, he had many conversations with
the defendant in relation to the interest, and the interest of
her children in the premises, and in relation to the title;
that in all these conversations the defendant never pretended
that she had any other interest or title than what was given
by the deed from *Helena* and *Henry H. Kip ;* and that, by
the legal construction of that deed, she supposed that she
had a life estate in the premises, and nothing more. The
witness stated, that the reason of his inquiring into the title
to the premises was, that he had been engaged in nego-

tiating a purchase of some of the rights of the children of *R. Cary* the elder, in the property; that his conversations with the defendant were had in reference to the contemplated purchase, and that in all these conversations the defendant admitted the right of the children to sell, when of age, subject to the life estate which she claimed under the deed from the *Kips.*

A verdict was found for the plaintiff, subject to the opinion of the Court, on a case which was submitted to the Court without argument.

SPENCER, Ch. J. delivered the opinion of the Court. The first objection to the deed from the *Kips* is, that it is a deed of bargain and sale, and that upon such a deed a use cannot be limited to any other person than the bargainee. This Court adopted and recognized that principle, in *Jackson* v. *Myers,* (3 *Johns. Rep.* 396.) *Sanders,* in his *Treatise on Uses and Trusts,* gives this question a very full discussion. He says, (p. 315.) " that the nature of the estate since the statute is the same as it was before; that the bargainee is still but a *cestui que use,* and though he has a legal, instead of a fiduciary estate, since the statute, yet, *that* legal estate is made such by force of the statute of uses, and not accordindg to the rules of the common law. Upon this principle, it has been held, and is now established, that no use can be limited to arise out of the estate of the bargainee to a third person,(a) for that would be to limit a use to arise upon a use. Therefore, if *A.* bargains and sells in fee to *C.,* to the use of *A.,* (the bargainor,) or to any other person, for life, or in fee, this limitation to the use is

---

(a) Though a *use* cannot be limited, on a *bargain* and *sale,* to any person but the *bargainee;* yet, by a *lease* and *release,* a use may be limited to *third* persons, the *possession* of the *releasee* being sufficient to serve such *uses :* As if *A.* bargains and sells land to *B.* for a year, and *releases* to him, *habendum* to *B.,* his heirs and assigns, to the *use* of *C.* for life, remainder to *D.* for life, &c. ; for the statute intervenes and transfers the possesion to *C.* the *cestui que use.* But if the first use is declared to the *releasee* himself, in fee, (as in the above case,) he is in by the *common law,* the release operating by enlarging the estate of *B.* to a fee, and the seisin is no longer open to serve *uses* to third persons. Co. *Litt.* 276. *a. Butler's* note. *Sanders on Uses,* 364, 365, 366, 367.

void. But though this declaration of the use is void as a use, yet it has been a question, whether it would not be supported as a trust, in Chancery": And he apprehends it would be supported in that Court. *Shepherd*, in his *Touchstone*, (505, 506, 507.) holds the same doctrine. He observes, that if one seised of land in fee, bargain and sell it, or make a lease of it to another in trust, or for the bene-fit of a third person, this is but a *Chancery trust*, in this third person, as was clearly held in 8 *Car. B. R.*; and he proceeds to show that a fine, feoffment, or recovery, may be had of land, to the use and intent, that either the parties thereto, or others, shall have it for any time or estate. *Cruise,* (tit. 12. ch. 2d sec. 11. 12. 24.) confirms the positions of *Shepherd* and *Sanders*; and, indeed, there is no case to the contrary. This doctrine receives full and complete con-firmation from the observations of Lord *Hardwicke*, in *Hop-kins* v. *Hopkins*. (1 *Atk.* 591.)

The legal estate, therefore, was in *Cary* and wife, under the deed from the *Kips*; and it is the settled doctrine of this Court, that we look only to the legal estate in an ac-tion of ejectment, disregarding the equitable interest. (8 *Johns. Rep.* 488. and the cases there cited.)

Mrs. *Cary* having survived her husband, and the estate granted to them being neither in joint-tenancy nor tenancy in common, and so not affected by the statute, she, as sur-vivor, takes the whole legal estate. This point was de-cided at the last term, in *Jackson* v. *Stevens.**

Independently of these considerations, the case shows that the defendant deduced a legal title to himself, as the heir of *Cornelius P. Low*, who, it was proved, acquired a complete title to the premises under the original patentee ; and, most certainly, she was not concluded by the deed from the *Kips*, from asserting her title. Without stopping, therefore, to inquire whether, under any circumstances, the lessor of the plaintiff could avail himself of that deed, as an estoppel, which I am clearly of opinion he could not, the defendant never could be estopped by it, as she was a *feme covert* when it was given.

The evidence of declarations made by the defendant avail nothing, for although parol declarations of tenancy

have been received, with certain qualifications, parol proof has never yet been admitted to destroy or take away a title. To allow parol evidence to have that effect, would be introducing a new and most dangerous species of evidence. The statute, to prevent frauds and perjuries, which has been considered the *magna charta* of real property, avoids all estates created by parol, and all declarations of trust, excepting resulting trusts, regarding any lands, tenements, or hereditaments. Yet, in defiance of this statute, we are asked to devest the defendant of what appears to be a complete title to the premises, by her parol declarations. This cannot be listened to.

Judgment for the defendant.