FRANK BROWN and MARY R., his Wife *vs.* WILLIAM RENSHAW.

*Construction of Deeds of Trust—Legal and Equitable Estates— Statute of Uses—The words, to his and their Proper Use and Behoof—Rule in Shelley's Case—Power of Appointment—Decree, and Deed in pursuance of it from the Trustee, to Re-invest the Settler with the Legal Estate in Property, discharged from Trusts created by Deeds—General Warranty in Subsequent Deed from Settler, to a third-party.*

W. K. H., on the 6th May, 1854, for a money consideration, conveyed certain property to C. H., his heirs and assigns forever, *habendum*, to him, his heirs and assigns forever, to his and their proper use and behoof, in trust, nevertheless, for the uses and purposes expressed in the deed, that is to say; for the wife A. of W. K. H., for her life, and in case the husband should survive the wife, then to him for life; and in case there should be any issue of the said parties living at the death of the survivor of them, then to the use of such child or children or their issue, in such proportions as the survivor or longest liver should appoint by will; and, in default of such appointment, then to such children equally; and, in case W. K. H. and A., his wife, should leave no children or descendants, then to such persons as W. K. H. should appoint by will; and, in default of such appointment, then to the use of the right heirs of W. K. H. On the 8th December, 1855, W. K. H. and A., his wife, for a money consideration, conveyed another parcel of ground to C. H., his heirs and assigns forever. on the same trusts. A. died in 1857, leaving issue, a son, who died an infant, shortly afterwards. In 1859, W. K. H. by a proceeding in equity against C. H., obtained a decree, whereby C. H. was authorized and required to re-convey to W. K. H. the property embraced in the deeds, free, clear and discharged from the trusts of the several deeds, and the uses therein declared, so that W. K. H. might have and hold the several parcels of ground, in the same right, interest and estate, as he held the same prior to the execution and delivery of the several deeds. A deed of re-conveyance was accordingly made. Afterwards W. K. H. conveyed the property to L., in fee, with covenant

Brown and Wife *vs.* Renshaw.

of general warranty, and for further assurance, and. also with covenant against all or any attempt to execute the power of appointment contained in the deeds of trust. R. purchased the right and estate of L., from those holding the estate for her benefit. In a proceeding in equity by R. against B. and wife for a specific performance by them, of a contract of purchase of this property from R., it was HELD :

1st. That C. H., whether as bargainee or feoffee in the deeds of trust, took the legal estate or seizin in the property conveyed, by force of the Statute of Uses; and that the uses declared and limited therein in favor of A. and W. K. H., were mere equitable estates ; and that the words in the first deed of bargain and sale to C. H., " to his and their proper use and behoof," following the words of limitation to C. H. and his heirs, had no particular meaning or effect in determining either the extent of the interest conveyed or the nature and quality of the estate intended to be vested, and that they served no office whatever in such deed.

2nd. That the estate for the life of W. K. H. united and coalesced, by force of the rule in *Shelley's Case*, with the ultimate limitation to his right heirs, so as to constitute an equitable fee simple. in him.

3rd. That if there were nothing more than the decree and the deed made in pursuance of it, the power of appointment was destroyed ; and if not, the subsequent deed to L. with covenant of general warranty, effectually extinguished it; and that the decree and deed re-invested W. K. H. with the legal estate in the property, and the absolute ownership and dominion over it, discharged from all trusts declared in the deeds to C. H.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court. It appears from the record, that after the execution of the deed from William Key Howard to Catharine E. Lee on the 7th February, 1859, William Key Howard married again, and that he has had children by his second wife, and that he, his wife and children are now alive.

, The cause was argued before BARTOL, C. J., GRASON, ALVEY and MAGRUDER, J.

*Edward Otis Hinkley*, for the appellants.

The case of *Ware vs. Richardson*, 3 *Md.*, 505, is a gift to a trustee for use of donor for life—then for Mrs. Richardson, a married woman, for life, and at her death, for her legal heirs—held that Mrs. Richardson took an *equitable* estate for life, and the heirs a legal estate, by virtue of the Statute of Uses, and the rule in *Shelley's Case* therefore did not apply.

DOBBIN, J., in the Court below, in his opinion in this case, held that the ultimate remainder to the heirs of Howard was an *equitable estate*—although in *Ware vs. Richardson*, it was held to be a legal estate. The reason he gave for so holding is that the estate to the trustee in this case is limited to him, "his heirs and assigns forever, *to his and their proper use and behoof*, in trust, &c.," while in *Ware vs. Richardson*, the words *to their proper use*, &c., are omitted. It is submitted, that in view of the opinion in *Ware vs. Richardson*—the intention must govern, and these words make no difference.

This deed is a feoffment, and the ultimate use to the right heirs of Wm. Key Howard, is a *legal fee*, while the estate to Wm. Key Howard, himself, is an equitable life estate. If these words should make any difference, it is specially to be noticed that they are *omitted* in the second deed.

In the case of *Parkes vs. White*, 11 *Vesey, Jr.*, 208, 226 and 233 -the estate was *conveyed to* the trustee and his heirs, for the use of Mrs. Parkes for life, and *after the determination of that estate, to the use of* the trustee and his heirs during her life, to support contingent remainders, nevertheless to permit her to receive the rents, for her sole and separate use for life—and at her decease, to the trustee, his heirs and assigns, in trust for her appointee by will, and in default thereof for her child; and if more than one, to a trustee, to divide between the children, *with ultimate remainder to her right heirs*. On p. 233, the

Lord CHANCELLOR, says: "the last limitation to the right heirs of Catherine Parkes, as expressed, raises a rational doubt, whether it was not a trust, *but* a legal estate;" and therefore whether it could be connected with the legal estate limited to her in the beginning.

If the decision in *Ware vs. Richardson* be sound law, it is clear that the ultimate remainder to the right heirs of Catharine Parkes in that case was a legal estate. It is particularly to be noticed that as above stated, the conveyance in the case of *Parkes vs. White,* was, as it is here, to White and his heirs, *for the use of White, his heirs and assigns.* In that case an attempt was made to execute wills under the power; and these wills were handed to purchasers, but the Chancellor ordered them to be returned, and said (p. 233) "the object in giving her power to dispose, not by deed but by will, was that White (the trustee) should so manage the legal estate, that to her death she should remain by virtue of his protection in possession of a free and uncontrolled will, enabling her to make a disposition." Now it would seem on the authority of this case, (*Parkes vs. White,*) that Wm. Key Howard cannot under his power to make a will, execute a deed. If the case of *Ware vs. Richardson,* does not control this case—it may be asked in what respect does that case differ from this.

It is submitted that the words in the *habendum, to his and their proper use and behoof* are idle—wholly useless, and can have no effect whatever upon the construction. According to *Ware vs. Richardson,* the whole paper must be looked at with regard to the *intent* only. Certainly here was no intent that the trustee should convert the property *to his own use.*

The whole question turns upon the right of Mr. Howard to break up a trust which was deliberately made by him, by executing a deed when no such right was reserved to him nor *intended* to be exercised by him, but only a right to dispose by will.

In *Ware vs. Richardson*, creditors sought to take Mrs. Richardson's property from *her heirs*, and the Court said, to do so would defeat the intent · But here Howard attempts to defeat, by deed, the right of those who would be his heirs.

*John P. Poe* and *Bradley T. Johnson*, for the appellee.

1. The rule in *Shelley's Case* operated upon the estate in Wm. Key Howard, after the death of his wife and child.

The ultimate remainder being to his heirs in fee, the present estate for life, coalesced with this remainder in fee, and gave him the equitable estate in fee, subject to the intermediate limitations.

(*a.*) By the technical rules under the Statute of Uses, the estate of Howard and that of his heirs in remainder, are identical in kind, both being equitable.

If Howard's deed be considered a feoffment, it transfers the legal estate to Charles Howard; the limitation to the use of himself and his heirs, executes the use under the Statute, and vests the legal estate in Charles Howard, and the equity only remains in Wm. Key Howard and his heirs.

If the deed be considered as a deed of bargain and sale, at common law, the Statute executes the use in the bargainee, Charles Howard, and equity preserves the trust in Wm. Key Howard and his heirs.

If it be construed a Maryland conveyance, under Maryland statutes or decisions, the legal estate passed to Charles Howard, and the equity is reserved to Wm. Key Howard and his heirs.

The forms for conveyancing, prescribed by statute, and the words or things declared necessary in deeds, constitute a new Statute of Uses—another statutory declaration of the effect of words in conveyancing.

In any point of view, whether the deed be considered as feoffment, or bargain and sale, at common law, or

Maryland conveyance, the effect is to create in W. K. Howard and his heirs, an estate identical in quality and kind. 1 *Preston on Estates*, 263; *Fearne on Remainders*, 28; *The Provost of Beverly Year Bank*, 40 *Ed.*, 39; *Williams on Real Property*, 250; 2 *Crabbe on Real Prop.*, 508 *; *Hopkins vs. Hopkins*, 1 *Atkins*, 581–589; *Cases temp. Talbot*, 165; *Leonard's Lessee vs. Diamond*, 31 *Md.*, 541; *Ware, et al. vs. Richardson*, 3 *Md.*, 548.

(*b.*) The reservation of the power in Howard, *by Howard himself* to devise, does not alter the consequences.

Under the rule in *Shelley's Case*, he took the life estate and the remainder in fee, and the intermediate limitations were preserved and took effect All such intermediate limitations had actally taken effect and become inoperative, except the power which *he himself* had reserved to himself to make a will.

But this power created no new faculty in him. If the power had come from some one else, it would have given Howard a potentiality he did not possess before. But the power from a man to himself to make a will, is void. The power to do so must come from some one else. It is created by the State. It is exercised according to law. The law gives every man the power to make his own will. He cannot give himself such power. Even if the power to devise had been a substantial creation of a faculty, or potentiality in Howard, which did not exist before—if it had been created by some one else—the limitation over being to the right heirs of Howard, in default of a will by Howard, made this power in Howard to devise, a power appendant, and that power appendant was extinguished by the conveyance by Howard to Mrs. Lee. 1 *Sugden Vendors, ch. II, sec. III, para.* 20–21, *marg. pp.* 79 and 80, *Ed.* 1856.

(*c.*) But even if this power to devise be a valid power W. K. Howard and his heirs and devisees are estopped from exercising it, contrary to the covenant of his deed to Mrs. Lee.

1st. Because he is estopped by his petition in equity and the decree of the Court destroying or vacating the trust.

2nd. Because he is estopped by the covenant with Mrs. Lee, not to exercise the power to devise, reserved in the deeds to Charles Howard, unless for the purpose of devising the property to her, her heirs and assigns. The covenant to make such a will, if it were necessary, could be enforced in equity. *Dufour vs. Pereira*, 1 *Dickens*, 419 ; 1 *Williams on Extrs.*, 105 ; *Graham vs. Wickham*, 1 *De-Gex, Jones & Smith*, 474 ; *Logan vs. Weinholtz*, 7 *Bligh, N. S.*, 1 ; *Jones vs. Martin*, 5 *Vesey*, 266 ; *Lewis vs. Maddox*, 8 *Vesey*, 150 ; *Fortescue vs. Hennah*, 19 *Vesey*, 66 ; *Semmes vs. Worthington*, 38 *Md.*, 302 ; *Needham vs. Kirkman*, 3 *B. & A.*, 531 ; *Eyre vs. Munn*, 3 *Kay & Johnson*, 305 ; *Jones vs. How*, 9 *C. B.*, 1 ; *Sugden on Powers*, *ch. X, sec.* 11, *p.* 5.

ALVEY, J., delivered the opinion of the Court.

This is an amicable bill filed by the appellee against the appellants for a specific performance of a contract of purchase of certain real estate in the City of Baltimore. The question presented is as to the sufficiency of the title offered by the vendor, and declined by the vendee; and this question depends upon the construction of two deeds ; the first, from William Key Howard to Charles Howard, dated 6th day of May, 1854, and the second, from William Key Howard and Agnes, his wife, to Charles Howard, dated the 8th of December, 1855.

By the first of these deeds, the estate was granted and conveyed to Charles Howard, *his heirs and assigns forever*, and, in the habendum of the deed, it was declared to be to him, his heirs and assigns forever, *to his and their proper use and behoof*, in trust, nevertheless for the uses and purposes therein expressed—that is to say: for the wife, Agnes, of William Key Howard, the grantor, for her life, and, in case the husband should survive the

wife, then to him for life; and in case there should be any issue of said parties living at the death of the survivor of them, then to the use of such child or children, or their issue, in such proportion as the survivor or longest liver should appoint by will; and, in default of such appointment, then to such children equally; and, in case William Key Howard and Agnes, his wife, should leave no children or descendants, then to such persons as William Key Howard should appoint by will; and, in default of such appointment, then to the *use of the right heirs* of William Key Howard.

By the second deed another piece of property was granted, and the uses and trusts declared were the same as in the former deed; the only difference being, that in the last deed executed, the estate was simply granted to Charles Howard, his heirs and assigns forever, without the additional words contained in the former deed, "to his and their proper use and behoof," following the words of limitation.

Mrs. Agnes Howard, the wife, died in 1857, leaving an infant child surviving her, but which died a short time thereafter, while still an infant. These events occurring, there was a failure of the limitations contained in the deeds, except those to the husband for life, with power of appointment by will, to such persons as he might think proper, and, in default of such appointment, to his right heirs.

In this state of case, in 1859, William Key Howard filed a bill in equity, in the Circuit Court for Baltimore City, against Charles Howard, the only party defendant, to have the trusts under the deeds broken up and surrendered, and to have the legal estate in the property, embraced by both deeds, re-conveyed to him, free and discharged of all the trusts declared in those deeds. And by the decree that was passed, Charles Howard was authorized and required to re-convey to William Key

Howard the property embraced in the deeds, "free, clear, and discharged from the trusts of the said several deeds respectively, and the uses therein declared, so that the said complainant may have and hold the said several pieces or parcels of ground, *in the same right, interest, and estate as he held the same prior to the execution and delivery of the said several deeds respectively."* The deed of re-conveyance was accordingly made in pursuance of the decree.

Subsequently, William Key Howard conveyed the property, or nearly all of it, by deed to Mrs. Catharine E. Lee, in fee simple, with covenant of general warranty and for further assurance, and also with covenant against all or any attempt to execute the power of appointment contained in the deeds of trust. The appellee purchased the right and estate of Mrs. Lee, from those holding the estate for her benefit, and it is the title thus acquired that is now made the subject of question in this case.

There are two questions involved: 1st. Whether, by the terms of the deeds of trust, the limitation to William Key Howard for life, and in default of children or descendants of himself and wife, and of the appointments provided for *to his right heirs*, he took an estate in fee, either legal or equitable? and, 2nd, Whether, by operation of the decree, and the deed made in pursuance thereof, and the subsequent deed to Mrs. Lee, the power of appointment by will was extinguished?

In neither of these questions do we perceive any room for serious doubt as to the decision required to be made, upon settled principle and by force of direct authority.

1. *As to the first question:* The deeds of trust express a money consideration, and profess to be made thereon, though the amounts are merely nominal. The deeds therefore, containing appropriate terms, are to be treated as deeds of bargain and sale. *Matthews vs. Ward,* 10 *Gill & John.*, 449. And such being their character, the general principle applicable in respect to the operation

of the *St.* 27 *H. 8, ch.* 10, known as the Statute of Uses, is well established and familiar. That Statute enacted that any person having any use in lands should be actually seised of the legal estate of the person seised to their use. By long settled construction, an estate cannot be conveyed to one by bargain and sale to the use of another, because the bargainor hmself is seised to the use, and consequently the use to the bargainee is the first use, and attracts the Statute and exhausts its operation to the extent of the estate limited; the principle being that a use cannot be limited upon a use,—the Statute executing only the first use, and the second and all subsequent uses being but trusts cognisable exclusively by Courts of equity. *Matthews vs. Ward, supra.* The nature of the estate, says *Sanders, (Uses and Trusts,* p. 315,) "since the Statute is the same as it was before; that the bargainee is still but a *cestui que use,* and though he has a legal, instead of a fiduciary estate, since the Statute, yet, *that* legal estate is made such by force of the Statute of Uses, and not according to the rules of the common law. Upon this principle, it has been held, and is now established, that no use can be limited to arise out of the estate of the bargainee to a third person, for that would be to limit a use to arise upon a use. Therefore, if A. bargains and sells in fee to C., to the use of A., (the bargainor,) or to any other person, for life, or in fee, this limitation to the use is void. But though this declaration of the use is void as a use under the Statute, yet it will be supported as a trust in chancery." To the same effect, and substantially in the same terms, is this principle of construction of the Statute, with illustrations, found to be stated in *Gilbert on Uses and Trusts, by Sugden, top p.* 347, and in the *Touch., pp.* 506, 507, and also in *Sudg. on Pow. Intro., pp.* 10, 11; and that principle has been the foundation of numerous decisions. *Matthews vs. Ward, supra; Hopkins vs. Hopkins,* 1 *Atk.,* 591; *Jackson vs. Cary,* 16 *Johns.,* 302; *Croxall vs. Shererd,* 5 *Wall.,* 266, 282. See *Leonard vs. Diamond,* 31 *Md.,* 541.

It is very clear, therefore, that Charles Howard, the bargainee in the deeds of trust, took the legal estate in fee in the property conveyed by those deeds, by force of the Statute of Uses; and that the uses declared and limited therein in favor of Agnes Howard and William Key Howard were mere equitable estates. The words in the first of those deeds, "to his and their proper use and behoof," following the words of limitation to Charles Howard and his heirs, when used in deeds of bargain and sale, like those before us, have no particular meaning or effect in determining either the extent of the interest conveyed or the nature and quality of the estate intended to be vested. In such conveyances they serve no office whatever. *Doe vs. Passingham*, 6 *B. & Cr.*, 305; *Jackson vs. Cary*, 16 *John.*, 302.

Nor would the result be different if the deed were treated as a feoffment, as has been suggested it should be. The legal estate or seisin would still be executed in Charles Howard; for it is perfectly well settled, that a conveyance by way of feoffment to A. and his heirs, to the use of him and his heirs, will give him the legal estate. It is true, the Statute does in express terms require that one person be *seised to the use of another*, to make the case in which the trust or use to that other shall be transferred into possession by the Statute. But, notwithstanding the words of the Statute, to use the language of Mr. Sugden, "there are several cases in which it vests the possession in the very person in whom the seisin is vested: the strict words of the Act, in these instances, appear to have given way to the intention of the parties; and at this day a limitation unto, *and to the use of the same person,* is considered so clearly to vest the legal estate in him, that an express declaration, that he should stand seised to the use of another, would only have an equitable operation." *Note 2, by Sugden, to Gilbert on Uses and Trusts, top p. 369; Sammer's Case, 13 Co. Rep., 56.* In such case, "it

is not an use divided from the estate, as where it is limited to a stranger, *but the use and the estate go together;* " and consequently, the legal estate vests in him to whom, by the words of the instrument, the use is limited. *Meredith vs. Jones, Cro. Car.*, 244; *Whetstone vs. Bing*, 2 *P. Wms.*, 146; *Doe vs. Passingham*, 6 *B. & Cr.*, 305.

It being clear, therefore, in any view of the case, that Charles Howard took the legal estate, in trust for the uses declared by the deeds, and the interest or estate in the property conferred upon William Key Howard being merely equitable, the question is, whether the estate for his life, to commence at the death of his wife, so united and coalesced with the ultimate limitation to his right heirs, as to constitute an equitable fee simple in him, notwithstanding the intervening power of appointment? Of this we can entertain no doubt.

The estate limited to him for life and that to his right heirs being both equitable, the rule in *Shelley's Case* plainly applies. That rule applies to equitable as well as to legal estates; and it is now well settled, that the mere power of appointment is wholly ineffective until the power be executed; and in the case of a limitation to one for life, with power of appointment, and, in default of appointment, to his right heirs, the remainder limited to the right heirs will become an executed fee in the taker for life, under the rule in *Shelley's Case*, subject to be divested by the exercise of the power. In the case of *Cunningham vs. Moody*, 1 *Ves*, 174, Lord HARDWICKE, in speaking of the vesting of estates before the execution of powers, said, "nor does the power of appointment make any alteration therein; for the only effect thereof is that the fee which was vested was thereby subject to be divested, if the whole were appointed." That case, and the principle of it, were fully adopted in the case of *Doe vs. Martin*, 4 *Dunf. & East*, 39, 64.

2. *Now, as to the second question:*—We entirely agree with the learned Judge below, that the powers of appoint-

ment to, or the use declared in favor of, the child, children, or descendants of William Key Howard and Agnes, his wife, must be taken in a collective sense, and not distributively; and that the only child, children, or descendants, contemplated by the deeds, were those of the *joint* product of William Key Howard and his wife Agnes. And that being clear, if there was nothing more than the decree, and the deed made in pursuance of it, we should think the power of appointment effectually destroyed, and that William Key Howard would never thereafter be at liberty to exercise it. But the subsequent deed to Mrs. Lee, conveying the property in fee simple, with covenant of general warranty, effectually extinguished the power, if it were not otherwise destroyed. The power was appendant to the equitable fee simple estate of William Key Howard, and by a conveyance of his interest, upon which the power was dependent for its operation, the power was surrendered. In 1 *Sugd. on Pow.*, *side page* 79, it is said: "Where an estate is limited to such uses as A. shall appoint, and in default of and until appointment, to him in fee, the power is clearly appendant, and, by a conveyance of his interest, would be destroyed." And in the case of *Penn vs. Peacock, Cas. in Eq., temp.*, Lord TALBOT, 41, an estate was conveyed to a trustee in fee, in trust, to pay the rents to the separate use of a woman for life, and after her death, in trust, for such uses as she should by will appoint, and, for want of appointment, to her own right heirs. She joined with her husband in conveying the estate by demise, with a fine, to a mortgagee. And Lord Chancellor TALBOT, in holding the power to be extinguished, said: "'Tis very well known, that the operations of fines and recoveries are the same upon trust estates as upon legal estates; and that being so, it must inevitably follow, that an estate for life limited to the wife, and the remainder limited to her own right heirs, in default of any appointment made by

her last will, are both disposed of by the fine: That the power was one coupled with an interest and annexed to the inheritance, and so destroyed by the fine: That a lease and release, or any other conveyance, will carry with them all powers that are joined to the estate." The same principle was affirmed in the case of *Webb vs. Shaftesbury,* 3 *M. & K.,* 599.

Upon the whole, we are clearly of opinion, that the decree, and the deed made in pursuance thereof, re-invested William Key Howard with the full and complete legal estate, and absolute ownership and dominion, in and over the property in question, free, clear and discharged, of all trusts declared by the deeds; and that all powers of appointment therein declared have been completely and effectually extinguished. And as we perceive no valid objection to the title offered by the appellee to the appellants, and think with the Court below that the contract of purchase should be performed, we shall affirm the decree appealed from, with costs.

> *Decree affirmed, and*
> *cause remanded.*

(Decided 30th June, 1881.)