# BEVERLEY KENNON PETER

## *vs.*

## WALTER GIBSON PETER ET AL.

*Remainder to Grantor's Heirs—Foreign Law—Rule in Shelley's
Case—Equitable Estates—Spendthrift Trust—
Termination—Mistake.*

Whatever may be the rule as to a common law conveyance,
one may, by means of a deed of trust, create an estate in remainder in favor of his own heirs.                    pp. 165-168

A conveyance of real estate in Maryland must be construed
according to the law of Maryland rather than of the state where
the parties resided at the time of its execution.          p. 169

In the absence of proof of the law of another state, it will
be presumed to be the same as the law of this State.      p. 169

A decision in another jurisdiction cannot be regarded as settling the law of that jurisdiction unless it is by the court of last
resort.                                                    p. 169

In the case of a deed of trust which imposes active duties
upon the trustee in reference to an equitable life estate thereby
created, but not in reference to the equitable remainder thereon
in favor of the life donee's heirs, the use as to the life estate is
not executed, while that as to the remainder is executed, and
consequently the Rule in Shelley's Case does not apply.    p. 169

Where a deed of trust expresses a money consideration and
professes to be made thereon, though the amount is nominal, the
deed, containing appropriate terms, may be treated as a deed
of bargain and sale, the use being executed in the bargainee, and
the statute being exhausted, so that the beneficiaries both for
life and in remainder take equitable estates.              p. 170

Where one who settled his property in trust for himself and
his heirs had been a lawyer for nine years, was, so far as appears, in full possession of his faculties and, not having executed the deed of settlement on the day on which it was first

presented to him, had full opportunity to know its contents, *held* that the deed, which was clear and unambiguous in its terms, should not be set aside as having been executed without the benefit of counsel and under a misunderstanding as to its effect.                                                    p. 171

A spendthrift trust in favor of the creator of the trust is invalid.                                                      p. 172

Even though a trust is invalid in so far as it attempts to prevent the alienation of the trust property by the life beneficiary, he being also the creator of the trust, nevertheless the trust should not be terminated, so long as it may be a restraining influence against reckless waste and extravagance on his part, and against bad or incompetent management by him.    p. 172

Where the main purpose, in the creation of a trust in favor of the settlor and his heirs, was to protect the settlor and not to create or preserve an estate for his heirs, the trustees, after sufficient time has elapsed to prove beyond a reasonable doubt that such protection is no longer necessary, should exercise a power expressly given them to reconvey to the settlor.    p. 172

Exhibits which are neither originals nor properly proved should not be admitted.                                    p. 173

*Decided February 20th, 1920.*

Appeal from the Circuit Court for Montgomery County. In Equity. (URNER, C. J., and WORTHINGTON, J.)

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, STOCKBRIDGE and ADKINS, JJ.

*Ward B. Coe* and *Henry E. Davis,* with whom were *Albert M. Bouic* and *Joseph C. France* on the brief, for the appellant.

*Charles W. Prettyman,* with whom were *Gordon & Gordon* and *Talbott & Prettyman* on the brief, for the appellees.

ADKINS, J., delivered the opinion of the Court.

On the 23rd day of August, 1902, appellant made and executed the following deed of trust:

"This Indenture made this twenty-third day of August, A. D. 1902, between Beverly Kennon Peter (unmarried), party of the first part, and Walter Gibson Peter and Armistead Peter, parties of the second, all of the District of Columbia:

"Witnesseth, that the said party of the first part for and in consideration of the sum of ten dollars current money to him in hand paid by the said parties of the second part at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, enfeoffed, released and conveyed, and does by these presents grant, bargain, sell, alien, enfeoff, release and convey unto the said parties of the second part, their heirs and assigns, all the right, title, interest and estate of every kind whatsoever of him, the said party of the first part, and all his right, title, interest and estate in and to any and all pieces or parcels of ground whether situate in the District of Columbia or in the State of Maryland in which he has any interest either in possession, or in remainder or reversion.

"To have and to hold the same unto and to the use of the said parties of the second part, their heirs and assigns forever, in and upon the following trust—that is to say:

"In Trust for the benefit of the said party of the first part for and during his natural life, without power in said party of the first part to alienate the same, or to direct the alienation thereof, by conveyance in fee or by way of mortgage or deed of trust and to collect the rents, issues, income and profits arising therefrom, or that arise from the investment of the proceeds of the sale thereof, and the same, or so much thereof, as to the said parties of the second part may be thought needful, pay over to the said party of the first part, but in such way and manner that the same shall not be liable for his debts, contracts or engage-

ments, and without power on his part of alienating or anticipating the same or any part thereof, with power in said parties of the second part to sell or encumber the same or any part thereof at their discretion, and the same convey in fee or lesser estate by good and sufficient deed free from liability on the part of the purchaser or mortgagee to see to the application of the purchase money or money loaned, the proceeds of any sale to be reinvested and held upon the same trusts as are herein provided for the original trust estate.

"And on the death of the said party of the first part to hold said principal estate or the reinvestments thereof in trust for such person or persons and upon such estate or estates as to the said party of the first part may by last will and testament executed according to law direct and appoint; and in the event of death of the said party of the first part intestate, then to hold said principal estate or the reinvestment thereof in trust for his heirs at law.

"And further with power in said parties of the second part in their discretion (but without authority in the said party of the first part to direct the execution of such discretion) to reconvey said principal estate or the reinvestments thereof unto the said party of the first part, his heirs and assigns, free and released from the trusts herein declared.

"In evidence whereof the said party of the first part has hereunto set his hand and seal on the day and year first hereinbefore written.                    ·

"Beverley Kennon Peter.    (Seal).

"G. Freeland Peter.

"Levin S. Frey."

---

*"District of Columbia, to wit*—

"I, L. S. Frey, a Notary Public in and for said District, do hereby certify that Beverley Kennon Peter, party to a certain deed bearing date on the twenty-third day of August, A. D. 1902, and hereto annexed, personally appeared before me in said District, the said Beverley Kennon Peter being personally well known to

me to be the person who executed the said deed and acknowledged the same to be his act and deed.

> "Given under my hand and Notarial Seal this twenty-third day of August, A. D. 1902.
>
> "L. S. Frey,
> (Notarial Seal) "Notary Public."

On October 28th, 1918, appellant filed in the Circuit Court for Montgomery County a bill of complaint in which the execution of said deed is recited, and the following allegations are made:

That said deed was without any valuable consideration, and solely for the purpose of placing, at the time, beyond his personal control and disposition the property and estates transferred by said deed, but that the reasons actuating plaintiff in so doing no longer exist and he desires to be revested as of his former estate of the property and estates aforesaid, and to have the same reconveyed to him by the defendants; that by the terms of the deed said property and estates are to be held by defendants as a spendthrift trust, as to which plaintiff is advised said deed is in law and equity null and void; that while plaintiff is deprived of the power of disposition or control of said property defendants are given the right in their discretion to renounce and relinquish the said trust by reconveyance to plaintiff, and plaintiff is advised that by reason of this provision of said deed, defendants are not entitled against the will of plaintiff to continue to hold said property and estates solely at their pleasure, and without regard to the situation or condition of plaintiff in respect to either person or estate; that at the time of the execution of said deed plaintiff was unsettled in respect of his domicile and his vocation and purpose in life, and was so situated as to make it of doubtful prudence for him, in view of the possible vicissitudes of his immediate future, to remain in personal care and control of his estates and interests, and it was by reason of his then situation and prospects that he was

principally induced, in part of his own motion, and in part
by the representations and suggestions of others including
defendants themselves, who are elder brothers, to execute
said deed; that he was without the benefit of counsel, and
was unaware that the provision as to the spendthrift trust was
null and void, and that if he had been so advised he would
not have executed the deed; that at the time of executing said
deed he believed that it would be regarded by defendants, as
it was intended by him, to serve only the purpose of divest-
ing him temporarily of the control and management of his
estates, and that upon his future request defendants would
without question revest him with said estates and interests
by a reconveyance, otherwise he would not have executed
same; that he has never been married and is wholly without
dependents upon him or his estates, and therefore, no other
person than himself can be injured by his control or disposi-
tion of said estates and interests; that the income of plain-
tiff from said trust property is inconsiderable and inadequate
even to his personal support or any substantial contribution
thereto; and he is wholly without means to improve the
dwelling house, part of the trust estate, so as to make it a
source of revenue; that by reason of the circumstances plain-
tiff derives practically nothing from his said estates, and can-
not dispose of same, save the practically valueless interest for
his lifetime, except in the discretion of defendants; that he
has requested defendants to reconvey to him said estates and
interests but they have refused to do so.    There are other
allegations not necessary to be recited.    The prayer of the
bill is that defendants be directed and ordered to reconvey;
that the deed be declared to be null and void; and for fur-
ther relief.

.  The answer filed January 10th, 1919, avers that long be-
fore the execution of said deed plaintiff had been addicted to
the use of intoxicating liquors and narcotic drugs to such an
extent as to render him incapable of caring for himself or
his property, and had become a distressing burden upon the
care of his brothers and sister; that he incurred while under

the influence of these intoxicants considerable debts and obligations, and was in danger of dissipating all of the property which he then had or might afterwards acquire; that his habits were such as to deeply distress his family, and to render it probable that in a very short time his inheritance would be dissipated; that in order to provide against his own improvidence, and to protect himself against the results of his own intemperate habits, the said deed was voluntarily, of his own accord and of his own volition entered into as a means of preserving to himself as the years went by, that which came to him as an inheritance; that his two brothers, the defendants, were selected as trustees because of his confidence in them and the deep affection existing between them; that the conveyance was made for the conservation of his estate, because of his inability to protect and care for it; that since that time his habits have not improved, but have continued their hold upon him; that defendants have taken him to many hospitals and sanitariums for treatment; that his brothers feeling he was incapable of caring for himself filed a petition under the statute, asking that an inquiry be made as to whether or not he was a habitual drunkard incapable of caring for himself; that these proceedings were dismissed on his promise of reformation, but before the week was out, he was again under the control of his old habits; then proceedings were again instituted which resulted in the appearance of the plaintiff before the Court, where he voluntarily submitted himself to its jurisdiction, admitted his inability to care for himself and consented to the appointment of a committee and confinement by the committee in an institution; that Mr. Charles J. Maddox was at plaintiff's request appointed his committee and took him to his own home, and in such surroundings plaintiff did abstain to a very large degree from the use of intoxicants and after some months secured employment and for more than a year has kept himself employed and has been to a large degree temperate and self-supporting (the testimony shows that proceedings were

had in August and September, 1916); finally defendants at plaintiff's request wrote the judge before whom the proceedings had been brought that they would not resist the granting of an order for the discharge of plaintiff from the commitment if he could show the Court that such discharge was proper, and an order was passed discharging him; that an effort was made to induce defendants to renounce the trust, but they are unwilling to do this, because on several occasions before plaintiff has kept himself free from intoxicants for comparatively long periods, one of them at least quite as long as the present one, but after these periods of sobriety has again succumbed; and they feel that as a matter of protecting him from his own weakness they ought not to surrender the right which he voluntarily gave them to protect him and his property; that they have managed the affairs of their trust with fidelity in every respect without pecuniary compensation of any kind; that plaintiff is a lawyer by profession, had been engaged in practice for several years and executed the deed voluntarily and freely and of his own volition and without coercion or impelling influence exercised by any member of his family, although all the members of the family advised it.

Plaintiff in his own testimony supports the allegations of the bill as to his motives for making the deed, his being without counsel, and his intention and beliefs in regard to the effect of the deed; but admits he did not inform defendants of such motives, intention or beliefs.

The averments of the answer are supported, substantially, by the testimony. It appears the net income received by plaintiff from his property, including his home property, is about $1,200.00. One of the physicians, who has a sanitarium at Rockville where plaintiff was frequently treated, testified that in his opinion plaintiff would probably never recover from his habits. It further appears from the record that as late as February, 1919, a month after the answer in this case was filed admitting the abstention of plaintiff for

more than a year prior to that time, he was found helplessly drunk and apparently under the influence of narcotics.

The reasons urged by plaintiff for the relief prayed are as follows:

1. That the deed was executed without the benefit of counsel and under a misunderstanding as to its effect.

2. That the purpose for which the trust was created no longer exists, and therefore the continuance of the trust is unnecessary.

3. That the attempted limitation by the appellant of an estate in remainder to his own heirs effected a reversion, and consequently he alone is interested, and has a right to call for a reconveyance.

4. That even if the deed created a remainder in the trustees the use could not be executed until after the expiration of the life estate and therefore the equitable estate for life in the settlor and the equitable estate in remainder in his heirs at law coalesced under the Rule in Shelley's Case, and the entire beneficial interest is in the appellant.

It will be more convenient to consider first the third and fourth points.

As to the third point, which was most ably and persuasively presented, it is unquestionably true that at common law a grantor could not by deed convey an estate in remainder to his own heirs, and a very high authority, the late MAJOR VENABLE, in his syllabus on Real Property, declared that to be the law of this State in reference to common law conveyances. But, assuming that to be true, as to such conveyances, it does not follow that a settlor may not, by a deed of trust, create such an estate; and whatever the rule may be in other jurisdictions, such remainders have been upheld by this Court in at least three cases, and in another case the principle was recognized.

In *Williams* v. *Williams,* 63 Md. 371, the deed was set aside on another ground. It was a most strenuously con-

tested case in which very able counsel appeared on each side. If the point we are now considering could have been successfully urged it would have settled the whole controversy; and yet it was not suggested by Col. Charles Marshall, John V. L. Findley and Robert Gilmor who were seeking to have the deed vacated or in any way referred to by the Judge below or in this Court. But in a dissenting opinion by JUDGES MILLER and ROBINSON (referring to the rule that a gift obtained where a confidential relation exists is *prima facie* void) it is said, "It cannot in reason be applicable where the deed simply settles the estate and property of the grantor upon *himself for life* and after his death transmits it to *his own heirs at law.* If a party capable of disposing of his property chooses, for the purpose of protecting it from his own improvidence, or for any other reason, thus to settle it, why should a court of equity look with suspicion upon the transaction simply because he has made his father or his solicitor the trustee in the deed of settlement?"

This language has been quoted with approval in several late cases, viz.: *Rogers* v. *Rogers,* 97 Md. 573; *Von Buchwaldt* v. *Schlens,* 123 Md., at p. 409.

It will also be noted that, in the case of *Brown* v. *Renshaw,* in 57 Md. 67, relied on by the appellant as sustaining his position that there is a merger in the case at bar under the Rule in Shelley's Case, the Court does not distinguish between a remainder limited to the settlor's heirs, and one limited to the heirs of another, and does not rest its ruling on the doctrine that a remainder given by deed to the settlor's own heirs creates a reversion.

In *Numsen* v. *Lyon,* 87 Md. 31, Caroline King, in contemplation of marriage with Edgar G. Taylor, made a deed of trust of all her property to Randolph "in trust to permit and suffer her during the term of her natural life to take, hold, use and enjoy the said property, estate and effects, and the rents, issues and profits thereof, for her sole and separate use as a *feme sole,* and at her death for the use of any descend-

ants she may have living at the time of her death, and in default of such, for the use of her right heirs, with power, however, to the said Caroline King during her life to devise or bequeath the same or convey the same by deed with the assent of the said trustee, testified by his uniting in the said deed." Held, that "by the terms of the deed to Randolph, Caroline Taylor had an equitable life estate, with a contingent remainder to such descendants as might be living at the time of her death, and if none such should then be living a remainder was given to her right heirs. These remainders were legal and not equitable. They depended on a contingency with a double aspect; that is, in the event of her having descendants living at the time of her death, their title then vested; but in the other event of her having no living descendants at the time of her death, the title of her right heirs then vested," citing *Ware* v. *Richardson,* 3 Md. 505.

In *Mercer* v. *Hopkins,* 88 Md. 292 (see p. 313), Samuel Mercer made a deed of trust to Lavinia Hopkins which empowered the trustee to collect and receive the income of the trust estate and to pay it over to the settlor for life and after his death to his widow for life and after her death, if he should leave no children, for the use and benefit of the right heirs of the settlor. Held: Samuel took an equitable estate for life and his right heirs a remainder in fee. It was urged in this case that the settlor took under this deed by way of resulting trust; also a fee under the Rule in Shelley's Case. But this Court held, on the authority of *Ware* v. *Richardson,* that it did not come within the Rule in Shelley's Case. And also decided that the settlor did not take by way of resulting trust.

Again in *Mercer* v. *Safe Deposit & Trust* Co., 91 Md. 102, where the same deed of trust was under consideration in another phase, this Court said: "By this deed the grantor gives the legal estate in his property to the trustees named in his deed, and creates for himself an equitable life estate, with a contingent remainder to his right heirs." "As the preceding

life estate in the grantor was an equitable estate, and the remainder to the heirs a legal estate, this limitation is not within the Rule in Shelley's Case, and the limitation over to the heirs was good as a contingent remainder."

Nor is the law as announced by the aforegoing decisions changed by the ruling of the Court in the cases of *Warner* v. *Sprigg,* 62 Md. 14, and in the *Raffel Case,* 100 Md. 141, as is strongly contended by counsel for appellant.

As to the former, where the Court held there was a reversion to the settlor because the trusts created did not exhaust the whole estate, and that all the interests which the grantor did not convey necessarily remained in him, it is apparent that the Court construed the words, "and in case of his intestacy the same to go according to law, under the existing statutory provisions of Maryland," not as a grant, but as a declaration by the grantor that he made no disposition of the remainder, because he desired it to go according to the laws of the State. And as in the *Raffel Case* the decision of the Court expressly follows the ruling in the *Sprigg Case,* it seems reasonably sure the Court in the *Raffel Case* gave the same construction to the words "shall vest in my next of kin or heirs according to law." It will be noted that in neither of these cases does the trust, by the terms of the deed, extend to the remainder. In neither case did the Court intimate that there was a reversion by reason of the fact that the grantor had failed to create a remainder because of the operation of the technical rule applicable at common law to common law deeds of conveyance. If the *Sprigg Case* means anything else it is contrary to all the later decisions except the *Raffel Case* and has been tacitly overruled by them, and it cannot be supposed that in the *Raffel Case* the Court was unmindful of the three cases it had so recently decided, reported in 87 Md., 88 Md., and 91 Md., or that it meant to overrule them by implication without reference to them, especially in view of the fact that as late as the *Buchwaldt Case,* in 123 Md., it quotes again with approval the language of

Judges Miller and Robinson in the *Williams Case* herein-before quoted. It is significant that Judge Bryan, who wrote the opinion in the *Sprigg Case,* also wrote the opinion in the *Numsen Case* in 87 Md. We hold that the rule contended for is not applicable to the case at bar.

But it is urged by appellant that as both the settlor and the trustees were residents of the District of Columbia at the time said deed was executed and part of the property con-veyed was there located the deed should be construed accord-ing to the law of that jurisdiction, because, he argues, the deed is presumed, as a matter of law, to have been executed with full knowledge of the District law. It is further argued that according to the decision of the District Court in *Miller* v. *Fleming,* 18 D. C. 139, in 1889, the ultimate limitation to the heirs of the settlor is void and that he has a simple rever-sion after his equitable life estate.

The answer to that argument is: *First*—In any event the deed must be construed according to Maryland law as to the real estate in Maryland. *Second*—The record does not dis-close that any evidence was offered as to the law of the Dis-trict of Columbia. See *Harper* v. *Hampton,* 1 H. & J. 622, and cases cited in note. *Third*—The decision referred to was not made by the Court of last resort of the District. It is true that the present Court of Appeals of the District had not been established at the time of the decision referred to. But it is also true that the Supreme Court of the United States was then the Appellate Court for the District. *Fourth* —That this case does not come within the Rule in Shelley's Case is, in our opinion, settled by the decisions in this State from *Ware* v. *Richardson,* in 3rd Md. down to the present time; the reason being that the use as to the life estate is not executed, because the trustee has active duties to perform in reference to the life estate; but he having no duties in reference to the remainder, the use as to the remainder is exe-cuted, and it becomes a legal estate in the remaindermen. Consequently the life estate and remainder do not coalesce.

In the case of *Handy et al.* v. *McKim,* 64 Md., at p. 576, JUDGE ALVEY, speaking for the Court, said: "In the case of *Ware* v. *Richardson, supra,* there was involved the construction of a deed in no material respect differing from the present, that deed being to a trustee and his heirs in trust for the separate use of a married woman for life, and after her death to and for the use and benefit of her legal heirs; and it was held, after careful and elaborate consideration, that the married woman took only an equitable estate for life, and the heirs in remainder a legal estate, by virtue of the statute of uses, and therefore the Rule in Shelley's Case did not apply. The present deed cannot, upon any substantial ground, be distinguished from the deed in that case, which was construed as a feoffment, and, of course, the same construction must be adopted here. That case has been frequently referred to in subsequent cases, and the principle of it reaffirmed by the Court; and any attempt to distinguish this from that case could hardly fail to restrict if not seriously to impair it as an authority, and thus produce doubt and distrust of titles held under deeds of that class."

Both the Court below and counsel for appellant had difficulty in reconciling the *McKim Case, supra,* with *Brown* v. *Renshaw,* 57 Md. 67. But the real ground of the decision in the last mentioned case is that the trust for life was not created to protect the estate of a married woman, nor had the trustee any active duties to perform either as to the life estate or the remainder. The use was therefore held to be executed both as to the life estate and the remainder. And as the deeds of trust express a money consideration and profess to be made thereon, though the amounts are nominal, the deeds, containing appropriate terms, are to be treated as deeds of bargain and sale, and by reason of the consideration the use is executed in the bargainee, and the operation of the statute is exhausted so that the beneficiaries both for life and in remainder take equitable estates. Even if another and passing suggestion made by the Judge in said case should seem to be

irreconcilable with the later case, as argued by counsel for appellant, of course the latter must control. Between that case and the case at bar there is no substantial difference in principle. We hold, therefore, that the Rule in Shelley's Case is not applicable.

This brings us to the 1st and 2nd points which may conveniently be considered together, viz.: *First*—That the deed was executed without the benefit of counsel and under a misunderstanding as to its effect. *Second*—That the purpose for which the trust was created no longer exists, or cannot be effected, and therefore the continuance of the trust is unnecessary.

As to these it is hardly necessary to do more than refer to the following cases which seem to be controlling, viz.: *Brown* v. *Mercantile Trust Co.,* 87 Md. 377; *Kensett* v. *Safe Deposit and Trust Co.,* 116 Md. 526; *Von Buchwaldt* v. *Schlens,* 123 Md. 405; *Brown* v. *Fidelity Trust Co.,* 126 Md. 175. Many other cases might be cited.

It is important to remember that there is no allegation or proof of fraud or misrepresentation or coercion, and that at the time of the execution of the deed appellant had been a lawyer for about nine years; that the deed was not executed on the day it was first presented, and therefore appellant knew or had full opportunity to know its contents; that there is no allegation or proof that appellant was not in full possession of his faculties at the time; that the provisions of the deed are so clear and unambiguous as to matters which appellant says he misunderstood that it is hard to conceive how a lawyer could misunderstand them. We see in this case no force in the contention that the deed should be nullified on the ground of misunderstanding or lack of counsel.

The purposes for which the trust was created are not set out in the deed, but there is internal evidence that it was intended to protect an improvident gentleman, who had reached the age of thirty years, from wasting his substance. Among other things it purports to create a spendthrift trust. It pro

vides for the care and management of his property; for the collection of income therefrom and the payment of income to the grantor; and for the making and changing of investments. One of the most important provisions is that giving the trustees the right in their discretion to terminate the trust during the lifetime of the settlor. According to the testimony of the appellant he executed the deed mainly because of his unsettled condition as to health, residence and occupation; he was fearful of going blind; was about to leave home; and "might by some possible chance, if drinking, sign some note or paper that would involve my interests and involve the interests of others."

It must be conceded that the spendthrift trust feature is a nullity, and to that extent the purpose of the deed fails. It may also be conceded that if appellant should conceive the idea of stripping himself entirely of his inheritance he could do so in spite of the deed. But it does not follow that the continuance of the trust has no longer any useful purpose. In the first place, in the view we have taken of other questions raised in the case, appellant has created rights in others which cannot be disposed of on the demand of himself alone; at least, as the case now stands. In the second place, time enough has not elapsed since appellant's last fall for us to be able to say with any degree of assurance that he may not again yield to his old cravings; and so long as there is any danger of that, the existence of the trust will be a restraining influence against reckless waste and extravagance, and against bad or incompetent management. But while we are not at liberty, at least for the present, to terminate the trust, we are entirely satisfied that its main purpose was to protect the settlor and not to create or preserve an estate for his heirs, and that when sufficient time has elapsed to prove beyond reasonable doubt that such protection by trustees is no longer necessary, they should exercise the power given them to reconvey the property to the grantor. There does not seem room for doubt, on appellant's own testimony, that anxiety

for his welfare has been the only motive impelling his brothers to refuse his request for a reconveyance up to this time. They could have no selfish motive, as they receive no compensation for the maangement of the property, and by antagonizing him they invite a disposition by will against their material interests as his next of kin; so we cannot but believe that the same affectionate solicitiude which has guided them in the past will lead them to gratify his wishes, when it is safe and proper to do so. What, if any, remedy appellant would have should they arbitrarily refuse to do so, in the absence of any reasonable ground for such refusal, it is not necessary now to decide.

Exceptions were filed by appellant to the admissibility of certain testimony and exhibits offered by appellees. The record does not disclose how these exceptions were disposed of. We think the exceptions should have been overruled except as to the exhibits. These exhibits do not appear to be originals or to have been properly proved. But as they were either not important or only relate to conditions which were proved by other evidence, there was no reversible error if they were not stricken out.

*Decree affirmed, costs to be paid out of trust estate.*