PATRICK McFADDEN, Appellant, *v.* JAMES WALLACE, Respondent.

Evidence — Certain Tests by which its Value may be Determined.—In support of a claim that a verbal lease had been entered into fifteen years before suit, upon which it was alleged that payments had been made, if no written evidence of such payment is claimed to have been given; if, at every payment of rent, some party, by mere chance, was present, and these parties were found, and produced as witnesses at the trial; if each of these parties should very particularly remember remarks made — the payment of rent — the amount paid — the kind of coin in which it was paid; if the sum paid amounts to more than the sum due under the alleged lease; if these witnesses have never thought of the transactions from the time of their occurrence until called on the stand — had never spoken to the plaintiff, or to his attorney, or to any human being about it — there are such intrinsic improbabilities inherent in the testimony, as to render it extremely unsatisfactory, when introduced to support a stale claim.

Evidence.—When the situation of a witness is such that he probably would have known, or heard of a fact, from the parties themselves, if it had existed, and had never heard of it, it affords some slight ground for the inference that the fact did not exist; and, under the condition of the evidence in this case, such testimony was admissible.

Idem.—Declarations of a party are always admissible against himself, or those claiming under him, by conveyance made subsequent to the making of the declarations, without reference to the time when, or place where they were made.

Idem.—In determining whether title ever vested under the Van Ness Ordinance, on a stale claim, all the acts and declarations, wherever made, are admissible against the party claiming, for the purpose of ascertaining what he did really do to bring himself within the purview of the ordinance.

Juror — Qualification of.—One who declares that he knows the defendants, and, if the testimony was evenly balanced, he would incline to their side, but would decide against them, if the testimony was against them, and that he would do his duty as a juror, under the instructions of the Court, is a competent juror.

Practice.—There is no error in permitting the purchasers of the defendant's title at a Sheriff's sale to defend the action, if they rely wholly on defendants' title, and do not deny his possession.

Appeal from the District Court of the Fourth District, City and County of San Francisco.

Suit to recover land. After the complaint was filed, and before answer, the interest of the defendant in the land in controversy was sold by the Sheriff, under an execution against him, to John McHugh and James Brennan, who, upon regular motion, and under exception by plaintiff, were substituted by the Court as defendants in the action, in place of James Wallace, and the answer was filed, and the defense conducted in their names, and on their behalf. At the trial, after plaintiff had exhausted his peremptory challenges, one Ryan was called as a juryman, who, in answer to questions touching his competency, said : "I am engaged in the same business as Brennan & McHugh ; I have business with them frequently ; if the evidence were evenly balanced, I would incline to their side—but, of course, I would decide the case against them if the testimony was against them." Whereupon the plaintiff challenged him as a juryman, on the ground of bias.

The other facts in the case are stated in the opinion. There was a verdict and judgment for defendants. From the judgment, and from the order refusing a new trial, the defendant appealed.

*E. A. Lawrence,* for Appellant.

*First*—In the spring of 1851, McFadden was in the possession of twenty acres of land, of which the premises in controversy constitute a part, at which time Wallace jumped the piece of land in controversy, and, after McFadden had gone to him several times to threaten suit against him, he recognized McFadden's title, and took a lease from him— rent at the rate of fifty dollars per year.

Six of these witnesses testified unqualifiedly to the existence of the lease between Wallace and McFadden, the payment of rent, etc. This testimony was also corroborated by the map introduced in evidence.

It was further in proof, that the remainder of the McFadden tract is now in possession of those holding under the McFadden title.

In order to overcome the case made by plaintiff, defendant offered no proofs to show that a lease did not in fact exist

between Wallace and McFadden; but they were permitted to introduce a large number of witnesses to testify to hearsay, the substance of which was, that the witnesses had lived at the Mission a long time, and didn't know of the existence of a lease from McFadden to Wallace—but that one might have existed, and they not have known of it.

Hearsay and irrelevant testimony should be excluded. (*De la Riva* v. *Berryesa*, 2 Cal. 196; *Vanderslice* v. *Hanks*, 3 Cal. 45; Greenleaf's Evidence, *passim*.)

McFadden went to the States in 1853, and subsequently lived in Los Angeles, and was absent from this city, and there was every reason why defendant's witnesses should not know of the existence of a lease.

But, to allow the landlord's title to be defeated, and the tenant to set up an adverse claim, merely because the landlord had not *published his lease in the neighborhood*, would be to break down all security for land titles, and allow the tenant to deny his landlord's title.

*Second*—It was error to allow defendant's witnesses to testify to the declarations of McFadden, made while off the land, to show he had no title.

Declarations in disparagement of title are never allowed to be given in evidence, except when made while the party is in possession, and then they are allowed as part of the *res gestæ*.

*Third*—The Court erred in not entering the default of Wallace, and in permitting Brennan & McHugh to defend this suit, in place of Wallace, and in allowing Brennan & McHugh to give in evidence any testimony under their answer; because they did not show in their answer that they had any right to defend this action.

Ejectment can only be brought against the party in possession of the premises. It is immaterial in whom is the title. The party in possession is the only one who can be defendant in ejectment, except in the one solitary case where the landlord is permitted to defend for his tenants. In that case, the landlord must apply to the Court, upon a proper showing, to be permitted to defend for his tenant. (2 Bur-

rill Pr. p. 320 ; Till. Adams on Eject. p. 257, and cases cited
in notes.)

The application of Brennan & McHugh was not made to
permit them to defend as landlords, but was made under Sec.
16 of the Practice Act, to be substituted as defendants in
the place of Wallace, on account of a change of interest—
they claiming to have acquired his title since suit brought;
and that was the order made.

That section, from the nature of the action, can have no
relation to the defendants in an action of ejectment, any more
than it could to an action of assault and battery, or slander
(*Donner* v. *Bradley*) ; but, if it could, the only interest
involved being the *possession*, and not *title*, the affidavit is
defective, because it does not show a change of possession.

This was a matter between Wallace and Hickey. Plaintiff
had a right to have Wallace defendant, because he was the
party in possession of the land, and against whom the writ
of possession must run, in order to be of any avail.

*Fourth*—It was error to deny plaintiff's challenge to Mr.
Ryan, as a juror, on the ground of bias.

The very answer of the witness is the best definition of
bias that I know of : "*If the testimony were evenly balanced,*"
he would incline to one side or the other.

In *People* v. *Reyes* (5 Cal. 347), this Court held, that the
law contemplates that every juror who sits in a cause shall
have a mind free from all bias or prejudice of any kind ;
and if a juror is prejudiced in any manner, he is not a
proper person to sit in the jury box.

Prejudice is a state of mind, which, in the eye of the law,
has no degrees. (*Freeman* v. *People*, 4 Denio, 9–35 ; *Smith*
v. *Floyd*, 18 Barb. 522.)

*E. Casserly & W. H. L. Barnes*, for Respondent.

*First*—Supposing Wallace's original entry to have been
unlawful as against McFadden's prior possession, the Van
Ness Ordinance and the Statute of Limitations would dis-
pose of the plaintiff's claim.

To avoid their effect, the plaintiff seeks to establish that
the relation of landlord and tenant existed between him and

the defendant, and introduced witnesses to prove a verbal lease, for a period indefinite in its commencement or termination, demising no particular quantity of land, and certain only in the amount of rent to be paid—the payments on which rent, as shown by his witnesses, more than double the sum stipulated and agreed upon between the parties.

*Second*—Evidence of general reputation, and reputed ownership, though composed of the speech of third persons, not under oath, is original evidence, and not hearsay—the subject of the enquiry being the concurrence of many voices to the same effect. (1 Greenleaf on Evidence, p. 116, Sec. 101; *Clapp* v. *Bromaghan*, 9 Cow. 537–557; *Gibblehouse* v. *Strang*, 3 Rawle Rep. 439; *Boyreau* v. *Campbell*, 1 McAllister, C. C. R. 135.)

No case, we believe, can be shown which excludes evidence introduced to show the concurrence of many minds upon a fact likely to be within their knowledge. Especially is it of importance in a case like the present. The Court is well aware of the condition of lands lying about the City of San Francisco in 1850 and 1851. The locality was but lately and sparsely peopled. The denizens were known to each other, and their claims and possessions matter of frequent discussion and dispute, as they were of their sole care and attention. The manner of each man's coming into possession of land, and the extent of his pretensions to title to the soil, were known to the rest. They were public and notorious facts; and, as in the present case, when a party in the sole and exclusive possession of land for fourteen years and upward, is claimed by another to have gone there and remained there, not in his own right, but under that other's title, the reputation of the nature and character of his tenure must rest with and be proved by those who then, and ever since have surrounded him. They may be strangers to the right, but they are not strangers to the fact.

*Third*—There was no error "in allowing defendant's witnesses to testify to the declarations of McFadden, made at divers times, to different parties, while off the land, to show that he had no title."

The propriety of such testimony, say the books, depends

upon two matters : First—That the declarations were made while the declarant has an interest; and, Second—That the party claims under him.  (*Reed* v. *Dickey*, 1 Watts, 152-4; *Norton* v. *Pettibone*, 7 Conn, 319; 1 Phillips' Evidence, p. 314—note 104.)

*Fourth*—It appears to us that if ever a man knew the duty of a juror, it was Mr. Ryan.  It was his duty, as a juror, to decide the case in favor of the defendants, if the testimony was evenly balanced.  This was the rule by which he should be governed.  But he adds to that a further declaration : "I would, of course, decide the case against them if the testimony was against them.  I would do my duty as a juror, and decide the case according to the evidence, under the instructions of the Court."

No juror could say more, and no man could be found more competent to sit as a juror than one who could thus briefly and completely express himself upon the question of his duty.  To exclude such persons from the jury box, upon such grounds, would close it against intelligence, and all comprehension of its duties.

*E. A. Lawrence*, for Appellant, in reply, quoted the following authorities, touching evidence of reputed ownership : *McEwen* v. *Portland*, 1 Oregon, 300; *Hawland* v. *Crocker*, 7 Allen, Mass. 153; *Trowbridge* v. *Wheeler*, 1 *Id.* 162; *Corley* v. *State*, 28 Ala. 22; *Henderson* v. *Covgill*, 31 Miss. (2 George) 367; *Blagg* v. *Hunter*, 15 Ark. 246.

SAWYER, C. J., delivered the opinion of the Court :

This is an action commenced on the 30th of December, 1864, to recover land of which defendant, Wallace, had been in the possession and occupation some fourteen years—he having entered upon the land in the fall of 1850, or spring of 1851, and erected buildings and commenced residing thereon as early as the spring of 1851.  The plaintiff claims by prior possession, and under the Van Ness Ordinance, by virtue of such prior possession.  He also claims that Wallace, after his entry, upon plaintiff's claiming the land, ver-

bally agreed to recognize his right, hold, as tenant of the plaintiff, for three years, at fifty dollars rent per annum, and paid rent accordingly; and that the possession of the defendant, therefore, for the purpose of vesting title under the Van Ness Ordinance, was the possession of plaintiff. The prior possession of plaintiff, and the tenancy, are denied. Defendant also insists, that if plaintiff ever had any right, by prior possession, it was lost by abandonment. The trial was had in 1866, and the testimony, as usual in such cases, is voluminous, and mostly oral.

We shall not discuss all the numerous points made, but only notice some that seem to be relied on with most confidence, and which will serve as examples of the whole. The plaintiff had given in evidence some acts claimed to be a recognition of a tenancy by defendant, and evidence of payment of rent on several different occasions. The lease, if any, was verbal. No receipt, or written evidence of any kind, is claimed to have ever been given to show payment of rent, and it curiously enough happened, that at every payment of rent for the three years claimed to have been made, some party, by mere chance, was present, and the parties so present were found and produced at the trial as witnesses from fourteen to fifteen years afterward; and although the circumstances were not remarkable, and there was nothing in particular calculated to impress them on the memory, each party very accurately remembered the important remarks made, the payment of rent, the amount paid, and the kind of coin in which it was paid; but the several payments made, when footed up, make an aggregate of considerably more than the amount of rent due under the agreement claimed to have been made between the parties. What is still more remarkable, is, that some of the witnesses upon the point had never thought of the circumstances from the time they transpired till they came on the witness stand; had never told plaintiff's attorney about it; had never spoken to plaintiff about it; "never communicated with any human being on the subject, till now;" did not know how it happened that they were called as witnesses, yet were called to prove, were interrogated upon, and testi-

fied to, the very circumstances wanted, and nothing else. The testimony may all be true, but there are certain intrinsic improbabilities inhering in such testimony, as to render it, at least, extremely unsatisfactory, when introduced in support of so stale a claim. This being the state of the plaintiff's testimony upon the vital point in the case, the defendant introduced the testimony of several witnesses, under objection and exception by plaintiff on the ground of immateriality, irrelevance and incompetency, of which Barrett's testimony is an example. He was asked if he had ever heard of Wallace's having a lease from McFadden of the Wallace tract? He answered that he never had. But he stated other facts, showing his intimacy with the parties at that time, and that his relations were such that in all probability he must have heard of it from the parties, had one existed. He had heard McFadden say that Wallace had taken the land from him, and he could not get it, but had heard nothing of a lease. He says, also, "I should have known of a lease if it had existed in 1852 or 1853, I was so mixed up with them, and I think Wallace would have told. I say, if Wallace had a lease I should more than likely have known it. He may have had one, and I not known it." It is true that this is negative testimony, as all testimony that there was no lease must necessarily have been, and it may have been entitled to very little weight against positive and credible testimony to the contrary. But where the situation of the witness is such that he probably would have known or heard of a fact from the parties themselves, if it had existed, it affords, at least, some slight ground for the inference that the fact did not exist. We therefore think, that, in the condition of the evidence, the fact that persons, situate as the witnesses who testified on this point were, had not heard of any lease from the parties, was admissible.

Declarations of a party are always admissible against himself, or those claiming under him, by conveyance made subsequent to the making of the declarations, without reference to the time when or place where they were made. The fact that McFadden's declarations, as to his own and Wallace's

title were not made on the land, does not, therefore, render them inadmissible. Had McFadden sought to give his own declarations in evidence in his own favor, the question would have been different. But the other party introduced them against himself.

We do not see that any injury could result from allowing Brennan & McHugh to defend the action as defendants. They succeeded to the interest of Wallace in the premises after the commencement of the action and before answer filed. They denied plaintiff's title, and defended on the title of Wallace, their grantor. They did not deny defendant's possession, so that was not in issue, and there was no obstacle to a recovery, had plaintiff made out a right to possession as against Wallace. It is very true that the Court, by permitting Brennan & McHugh to defend as parties succeeding to the interest of Wallace pending the action, under Section 16 of the Practice Act, could not have deprived plaintiff of a judgment for costs, damages, etc., for which Wallace would have been liable had plaintiff recovered. But the defense was made on Wallace's title, and the plaintiff failed to recover at all.

If there was any error in vacating the order substituting Lawrence as attorney, no injury could have resulted, for he was again substituted before the trial, and afterward conducted the case to its termination. But we think there was no error in vacating the substitution under the circumstances of the case.

We think Ryan was a competent juror, after a careful consideration of his entire examination on this point.

There is no force in the objection to the testimony of the witnesses Kenedy, Thorne and Dorland. There was no question as to *divesting* a title once *vested* under the Van Ness Ordinance by subsequent declarations. The question was, whether a title ever vested under that ordinance. The testimony upon which the question depends, all consists of acts and declarations of McFadden, and in so stale a claim, all his acts and declarations, whenever made, are admissible against him for the purpose of ascertaining what

he did really do to bring himself within the purview of the ordinance.

There is nothing of sufficient importance in the other points made, to require a more extended discussion; and, without particularizing further, we will only add that we find nothing in the record to justify a reversal of the judgment, or a disturbance of the verdict.

Judgment and order denying a new trial affirmed.