[No. 8879. In Bank.—July 30, 1886.]

GEORGE W. FRINK, APPELLANT, v. RICHARD ROE ET AL., RESPONDENTS.

EXECUTION — DESIGNATION OF PROPERTY TO BE LEVIED ON — WAIVER OF RIGHT BY DEBTOR — REGULARITY OF LEVY. — Under section 189 of the practice act of 1850, an execution debtor had the right of designating the property to be levied upon, but he could not defeat a levy by neglecting or refusing to exercise the right; and in the absence of a showing that such right was exercised by the debtor and disregarded by the officer, the former cannot be heard to complain, nor can a stranger to the writ, having no interest in or lien upon the property seized, question the regularity of the levy for such cause.

ID. — NOTICE OF SALE — INFORMALITY IN. — A failure to give the proper notice of a sale of real estate under an execution does not invalidate the sale.

ID. — SALE UNDER EXECUTION — WHAT ESTATE PASSES BY. — On a sale of real property under execution, the interest or estate of the judgment debtor in the property at the date of the sale passes to the purchaser, although acquired after the levy of the execution.

EJECTMENT — COMMON SOURCE OF TITLE — EVIDENCE OF PRIOR TITLE. — In an action of ejectment, where both parties claim to deraign title from the same source, the plaintiff need not introduce in evidence any conveyance from the former owner to the person having the common source of title.

POWER OF ATTORNEY — EVIDENCE TO INTERPRET OR ENLARGE POWERS. — Parol evidence is admissible to interpret the powers conferred by a power

of attorney, but not for the purpose of enlarging them or conferring others not enumerated.

ID. — POWER TO SELL — AGENT CANNOT SELL IN PAYMENT OF HIS OWN DEBTS — NOTICE BY PURCHASER. — An agent authorized to sell and convey the property of his principal cannot, as against the principal, convey it in trust for the payment of his own debts to one who has notice of the terms of the agency.

FRAUDULENT CONVEYANCE — VALIDITY OF INTER SE. — A conveyance for the purpose of defrauding the creditors of the grantor is valid and binding as between the parties, and as to all other persons except creditors of the grantor.

ID. — FRAUD ON SUBSEQUENT PURCHASERS — CONVEYANCE CANNOT BE QUESTIONED IN EJECTMENT. — Under the statute of frauds of 1850, a sale with the intent to defraud subsequent purchasers is fraudulent as against such purchasers for a valuable consideration and without notice, and as against such purchasers with notice if the grantee in the fraudulent conveyance was privy to the fraud. But the validity of the conveyance cannot be questioned in an action of ejectment if the pleadings contain no proper allegations of the fraud.

POWER OF ATTORNEY — REVOCATION — INTEREST OF AGENT — CONSIDERATION. — A power of attorney, although expressly stipulated to be irrevocable, may be revoked at the will of the principal, if the agent has no interest in its execution, and there is no valid consideration therefor.

ID. — POWER WHEN IRREVOCABLE. — Where a power of attorney is given for a valuable consideration, or is coupled with an interest, or is part of a security for the payment of money or the performance of some other lawful act, it is irrevocable, whether so expressed upon its face or not.

ID. — DEATH OF PRINCIPAL. — The death of the principal revokes a power of attorney, except where the power is coupled with an interest in the thing actually vested in the agent.

ID. — POWER COUPLED WITH INTEREST DEFINED. — To constitute a power coupled with an interest, the interest must be in the subject-matter over or concerning which the power is to be exercised; an interest in that which is to be produced by the exercise of the power is not sufficient.

ID. — POWER TO SELL REALTY — INTEREST OF AGENT IN SUBJECT-MATTER. — An agent to sell real property has not a power coupled with an interest, unless the instrument containing the power gives him such an interest or estate in the land as will entitle him to execute the power in his own name.

ID. — FRAUDULENT CONVEYANCE BY AGENT — WHEN NOT VOID. — Where a sale of real estate is made by an agent under a power authorizing him to sell and convey, and it appears upon the face of the deed when compared with the power that he has complied with the requirements of the latter, the legal title will pass to the grantee, and remain in him and those holding under him until set aside by a court of equity, notwithstanding the agent may have violated his duty to the principal by fraudulent practices which do not appear in the deed.

ID. — CONVEYANCE IN EXCESS OF AUTHORITY — WHEN VOID. — If, on the contrary, the agent acts without and in excess of the authority conferred

upon him, and his want of authority is apparent upon the face of the record, his attempted action is void, and a conveyance under such circumstances is not simply voidable, but absolutely void, and advantage may be taken of it in whatever court or proceeding it may be proffered as a basis of title.

ID. — RECORDING POWER OF ATTORNEY — NOTICE TO SUBSEQUENT PURCHASERS. — A power of attorney to sell and convey real estate, if duly recorded, is notice to subsequent purchasers dealing with the agent, in relation to the property, of the terms of the agency.

ID. — EVIDENCE TO SHOW INTEREST OF AGENT. — The action was brought to recover the possession of certain land originally owned by one Rising, who conveyed it by an absolute deed to one Hodgdon. At the time of the conveyance, Hodgdon executed to Rising a power of attorney authorizing him to sell and convey the land. The plaintiff claims title under a deed executed by Rising, as the attorney in fact of Hodgdon, after the death of the latter. *Held,* that parol evidence was inadmissible to show that the power given to the attorney was coupled with an interest in the land, or that he retained an interest therein after the execution of his deed to Hodgdon.

TAX DEED — RECITAL — SALE — INVALIDITY OF DEED. — A tax deed which recites that the tax collector offered the land on which the tax was levied for sale as one parcel, instead of offering it to the person who would take the least quantity and pay the tax, is void.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The tax deed referred to in the opinion was offered in evidence by the plaintiff, and excluded. It recited that the tax collector offered the land at public auction as one parcel, instead of offering the smallest quantity which any purchaser would be willing to take and pay the tax. The further facts are stated in the opinion.

*E. A. & G. E. Lawrence, Taylor & Haight,* and *Mich. Mullany,* for Appellant.

The power of attorney was irrevocable at death, because coupled with an interest and being for a valuable consideration. (*Barr* v. *Schroeder,* 32 Cal. 617; *Travers* v. *Crane,* 15 Cal. 12; *Blackstone* v. *Buttermore,* 53 Pa. St. 268; *Coffin* v. *Landis,* 46 Pa. St. 434; Story on Agency, sec. 476; *McGregor* v. *Gardner,* 14 Iowa, 326.) The deed from Rising to Hodgdon was a voluntary conveyance in fraud

of subsequent purchasers. Such deeds are void at common law without the aid of the statute of frauds. (Kerr on Fraud and Mistake, 228; Bump on Fraudulent Conveyance, 268; *Kimball* v. *Hutchins*, 3 Conn. 450; *Vance* v. *Boynton*, 8 Cal. 560.) The deed of Rising in trust for the payment of his debts was voidable, but not void. (*Marsh* v. *Whitmore*, 21 Wall. 178; *Bassett* v. *Brown*, 105 Mass. 551; *Greenwood* v. *Spring*, 54 Barb. 375; *Uhlich* v. *Muhlke*, 61 Ill. 499; *Leach* v. *Fowler*, 22 Ark. 143; *Estes* v. *Boothe*, 20 Ark. 583; *Wadsworth* v. *Gay*, 118 Mass. 44; *Adams Min. Co.* v. *Senter*, 26 Mich. 73; *Gaines* v. *Acre*, Minor, 142; Pomeroy's Equity, secs. 957–959.)

*McAllister & Bergin,* and *T. B. Bishop,* for Respondents.

The deed of Rising after the death of Hodgdon was void. (*Travers* v. *Crane*, 15 Cal. 16; *Barr* v. *Schroeder*, 32 Cal. 617.) The deed of Rising in trust for the payment of his debts was void. (*Dupont* v. *Wertheman*, 10 Cal. 367; *Mott* v. *Smith*, 16 Cal. 557; *Meade* v. *Brothers*, 28 Wis. 693; *Bostick* v. *Hardie*, 30 Ga. 836.) The invalidity was patent upon the record, and all parties dealing with the property took with notice. (*Hassey* v. *Wilkie*, 55 Cal. 525; *Brush* v. *Weare*, 15 Pet. 111; *Wilson* v. *Castro*, 31 Cal. 435.) The power of attorney was not coupled with an interest. (*Hunt* v. *Rousmanier*, 8 Wheat. 174; *Bonney* v. *Smith*, 17 Ill. 531; *Barr* v. *Schroeder*, 32 Cal. 617; *Tharp* v. *Breuneman*, 41 Iowa, 254; *Reed* v. *Welsh*, 11 Bush, 450.) The use of the word "irrevocable" in a power of attorney, when not coupled with an interest, confers no greater authority upon the agent than an ordinary power of attorney. (*Walker* v. *Denison*, 86 Ill. 144; *McGregor* v. *Gardner*, 14 Iowa, 340; *Blackstone* v. *Buttermore*, 53 Pa. St. 267.)

SEARLS, C. — This is an action of ejectment to recover a portion of South Beach block, No. 25, of the city and county of San Francisco.

Defendants had judgment, from which and from an order denying a new trial plaintiff appeals.

The appeal was heard by Department Two of this court, and a judgment of reversal rendered June 29, 1885. Upon petition, a hearing in bank was ordered, and after oral argument and filing of additional briefs, the cause is again presented for decision.

At the trial, the plaintiff, for the purpose of proving title in himself, introduced in evidence the judgment roll, etc., in case of *Peter Smith* v. *City of San Francisco,* from which it appears judgment in favor of plaintiff was entered March 4, 1851.

Plaintiff also offered in evidence a sheriff's deed from the city of San Francisco, by J. C. Hayes, sheriff, to John McHenry, dated June 17, 1851, and recorded June 21, 1851, which deed was executed pursuant to a sale of the demanded property made June 14, 1851, under an execution issued upon said Peter Smith judgment March 10, 1851, and levied on said property.

It appears that after notice of sale under the execution, an injunction issued whereby the proceedings were stayed until May 10, 1851, when a *venditioni exponas* issued, under which the sale was made on the date above mentioned.

Plaintiff deraigns title under the sheriff's deed through sundry mesne conveyances.

In the former opinion, it was said "the sale under the execution issued on the judgment in *Smith* v. *City of San Francisco* was regular, and passed all the title which the city had on the day of sale.

"The sheriff's deed passed such title to the purchaser, and such title came regularly by proper conveyances to and vested in D. B. Rising, under whom both of the parties to this action claim."

Counsel for respondents challenge this conclusion, and contend that no title passed under the sheriff's deed to McHenry, and in support of their contention call attention to the facts,—

1. That the premises in question constitute a part of what is known as the beach-and-water-lot property, the title to which vested in the city under the act of March 26, 1851. (Stats. 1851, p. 327.)

2. That under the law in force in 1851, a judgment created no lien on real estate unless a transcript of it were filed in the office of the recorder of deeds. (Stats. 1851, p. 443, sec. 172.)

3. That under section 184 of the practice act of 1850, " the following property shall be liable to be seized and sold on execution. . . . . All the real estate not exempt by law whereof the defendant, or any person for his use, was seised on the day of the rendition of the judgment, or at any time thereafter."

That under section 189, "the person against whom an execution for money is issued shall have the right to designate the property to be levied upon," and that twenty days' notice, either printed or in writing, was required to be posted prior to sale.

From the facts hereinbefore stated, it will appear that title to the demanded premises vested in the city subsequent to the issue and levy of the execution, and subsequent to the notice of sale, but before the sale took place.

The right of a defendant in an execution to designate the property to be levied upon is personal to himself, and may be waived. An officer may not deny the right if claimed. (*Ashby* v. *Dillon,* 19 Mo. 619; *State* v. *Willis,* 33 Ind. 118.)

If the debtor is absent, the officer need not hunt him up, or wait for his return. (*Cook* v. *Garza,* 13 Tex. 431; *People* v. *Palmer,* 46 Ill. 398.)

Clearly, the defendant in an execution under a statute giving him the right of designating the property to be levied upon cannot defeat a levy by neglect or refusal to exercise his statutory right, and in the absence of a showing that such right was exercised by defendant, and dis-

regarded by the officer, the former cannot be heard to complain, nor can a stranger to the writ, having no interest in or lien upon the property seized, be permitted to question the regularity of the levy for such cause.

A failure to give the proper notice of a sale of real estate under execution does not invalidate the sale; and in *Smith* v. *Randall,* 6 Cal. 47, it was held not to afford sufficient cause for setting it aside. (*Harvey* v. *Fisk,* 9 Cal. 94; *Cloud* v. *El Dorado County,* 12 Cal. 133; *Shores* v. *Scott River W. Co.,* 17 Cal. 628; *Sismon* v. *Eckstein,* 22 Cal. 590; *Blood* v. *Light,* 38 Cal. 649.) These preliminary questions disposed of, it only remains to inquire whether the title acquired by the city subsequent to the levy of the execution, and before the sale passed to the purchaser.

The purchaser at an execution sale acquires the real interest of the defendant, and nothing more. It is not like a sale in market overt, in which the apparent interest of the seller passes to the purchaser, but as a rule (to which there are a few exceptions) the latter takes the precise interest of the defendant. An after-acquired title by the judgment debtor does not pass to the purchaser.

The sheriff, as the enforced agent of the defendant, can give no warranty or covenant to bind or affect any after-acquired title.

The judgment and execution constitute the charter, the warrant of authority to the officer. They are evidence of his authority, and taken together indicate his duty, nothing more.

The sale itself is measured by the deed, and the authority to make it being in the officer, the purchaser may, as was said in *Blood* v. *Light,* 38 Cal. 640, rely upon the legal presumption that the acts of the officer preceding the sale have been duly performed; "that the officer has found no personal property; that he has seized upon the land which he is about to sell, and that he has advertised the sale as required by law." (*Cloud* v. *El Dorado County,* 12 Cal. 133; *Clark* v. *Lockwood,* 21 Cal. 224.)

The statute is directory so far as it deals with the manner in which the writ is to be executed. (*Smith* v. *Randall*, 6 Cal. 47; *Webber* v. *Cox*, 6 T. B. Mon. 110; *Hayden* v. *Dunlap*, 3 Bibb, 216.)

If the officer fails to comply with these merely directory provisions, it is sufficient cause to set aside the sale on application of the parties, but such failure does not render the sale void. (*San Francisco* v. *Riley*, 21 Cal. 59.) In the case at bar, so far as appears from the record, the judgment was not filed with the recorder, as at that time required by statute, and therefore was not a lien upon the real estate of the defendant.

The lien originated in the proceedings under the execution. Freeman, in his work on Executions, sec. 282, says: "The only effect of the levy of an execution upon real estate is to make the actual interest of the defendant therein liable to be taken and sold to satisfy the writ, and to make the title deraigned through such sale paramount to all conveyances and encumbrances made subsequent to the levy."

Is it the interest at the time of levy, or at the date of the sale, which is sold?

Freeman on Executions, sec. 335, in speaking of the title which passes under judgment and execution liens, adds "that the sale made under such a lien can ordinarily transfer no interest beyond that in fact held by the defendant when the lien attached, or acquired by him subsequently thereto, and before the sale"; and we are referred to a number of authorities in support of the proposition.

We have examined these authorities, but do not find them in point beyond establishing the general proposition that the purchaser in the case we are considering takes only the interest of the judgment debtor.

The question has, however, been considered in our own court.

In *Kenyon* v. *Quinn*, 41 Cal. 325, the defendant in an

execution had pre-empted certain land, subsequent to which the execution was levied upon it. The debtor paid for the land, and received a certificate of purchase from the government, after the levy, and before sale under the execution. A patent afterward issued, and this court held that, "assuming that the pre-emption claim of Bremens Kenyon was subject to seizure and sale under the defendant's execution (a point not now necessary to decide), all that the sheriff could have done, and all that he attempted to do, was to seize and sell such right, title, and interest as Kenyon had in the premises at the time of the levy, and such as he acquired between the time of the levy and the sale. At the date of the levy, Kenyon had no title to the land, either legal or equitable, not then having paid the purchase-money, or obtained a certificate of purchase. (*Hutton* v. *Frisbie*, 37 Cal. 475.) But after the levy, and before the sale, he paid the purchase-money and obtained a certificate of purchase, which vested in him an equitable title, and which entitled him to a conveyance of the legal title by a patent from the government. . . . . The defendant by his purchase and the sheriff's deed had simply succeeded to the equitable title of Kenyon; and when the latter afterward obtained the legal title by means of the patent, he held it in trust for the defendant (purchaser under execution), and could have been compelled to convey it upon a proper application to a court of equity for that purpose."

It is the sale and deed thereunder which passes the title of the execution debtor. The judgment, execution, and levy by the officer constitute the authority and fix the origin of the lien, and under the law define the property, to which such lien attaches, but they do not, any or all of them, measure the interest to which it attaches; or rather it attaches to any interest which the judgment debtor may have in the property, from the time such lien has its inception until a sale or termination thereof.

In this case, the lien only commenced with the levy of the execution. The *venditioni exponas* did not enlarge or modify it, but simply compelled the sheriff to sell, as though the original writ had remained in force. (Freeman on Executions, sec. 58.)

The legal effect of a sheriff's deed properly executed after a valid sale of property under execution (independent of the doctrine of relation under which a lien may have been perpetuated) is at least equal to that of a quitclaim deed of the same property executed by the debtor on the day of sale.

In *Emerson* v. *Sansome*, 41 Cal. 552, it was said that a sheriff's deed transfers to the purchaser all the interest the execution debtor had in the land sold at the date of the levy, but no subsequently acquired rights; but upon examination of this and some other analogous cases, it will be found the subsequently acquired rights have in every instance accrued after the sale; and in the only authorities we have been able to find where title vested before the sale, it is held to have passed by the sheriff's deed thereunder.

We therefore hold that upon a sale under execution the interest or estate of the judgment debtor in and to the property at the date of the sale passes to the purchaser, although acquired after the levy of the execution.

It follows that we may repeat, in the language of the former opinion in this case: "The sale under the execution issued on the judgment in *Smith* v. *City of San Francisco* was regular, and passed all the title which the city had on the day of sale."

We may add that this sale, or others depending on like facts, were upheld in *Smith* v. *Morse*, 2 Cal. 524, and in *Welch* v. *Sullivan*, 8 Cal. 165.

Again: both parties to the action deraign title to the demanded premises through Rising; and we understand the principle to be settled, that if in an action of ejectment both parties claim to derive title from the same

source, it is not necessary for the plaintiff to introduce in evidence a conveyance from the former owner to the person having the source of title. (*Spect* v. *Gregg*, 51 Cal. 198; 2 Greenl. Ev., sec. 307, and note.)

2. The title acquired by John McHenry under sheriff's deed passed by proper conveyances to, and on the 30th of March, 1853, was vested in, D. B. Rising, who, on the day last mentioned, executed a quitclaim deed of the premises to James H. Hodgdon for a consideration, as recited in the deed, of seven thousand nine hundred dollars.

On the same day, Hodgdon executed to Rising a power of attorney, by which, in consideration of five dollars, he constituted the latter his attorney in fact, " without any revocation or power of revocation " on the part of Hodgdon, the constituent, authorizing the attorney so constituted to bargain, sell, and convey the land conveyed by deed to Hodgdon just above mentioned, as well as certain other lands then recently conveyed to him, some of them by Rising, and some by Rising and one Raphael Schoyer.

The deed to Hodgdon was recorded March 30, 1853, and the power of attorney also on the 10th of October, 1853.

Rising, in his own name, and as attorney in fact of Hodgdon, on the tenth day of October, 1853, conveyed the demanded premises to David S. Turner and Samuel Hort in trust for the benefit of the creditors of the firm of Rising, Casselli and Company, of which firm Rising was a member, and under this deed of trust, and from the trustees mentioned as grantees, plaintiff deraigns title.

Hodgdon left the state of California soon after the execution of the power of attorney, and departed this life in 1862. Defendants deraign title through his devisee.

After the death of Hodgdon, and in 1866, Rising, as attorney in fact of the former, conveyed by quitclaim deed to Rufus Wade, under whom plaintiff claims by deed executed in 1867.

Upon the facts two main questions arise in reference to the validity of plaintiff's title.

1. As to the right of Rising under the power of attorney from Hodgdon to convey the property in trust for the payment of the debts of the firm of Rising, Casselli & Co.

2. As to the authority of Rising under the same power to convey the property to Wade in 1866, after the death of Hodgdon.

The contract which exists between the principal and agent is called a contract of agency; the right of the agent to act in the name or on behalf of another is termed his authority or power, and this, if conferred by a formal instrument in writing, is said to be conferred by letter of attorney or power of attorney.

It is with an instrument of this character that we have to deal. It was an instrument authorizing the conveyance of land, and was therefore necessarily in writing. In such cases, "the nature and extent of the authority must be ascertained from the instrument itself, and cannot be enlarged by parol evidence of the usage of other agents in like cases, or of the intention to confer additional powers; for that would be to contradict or to vary the terms of the written instrument." (Story on Agency, sec. 76; *Hogg* v. *Snaith*, 1 Taunt. 347.)

It must not be understood that the usages of business or of agents of particular classes cannot be introduced in evidence for the purpose of interpreting the powers actually given, or the modes of their execution.

In other words, parol evidence may be received to interpret the powers conferred, but not for the purpose of enlarging them or conferring others not enumerated

Interpreting this instrument from what appears on its face, we find it was executed in consideration of five dollars paid, and was irrevocable by the principal.

It cannot be contended that an agent authorized to sell and convey the property of his principal can, as

against such principal, convey it in trust for the payment of his own debts to one who has notice; and as in this instance the power was (as it was bound to be to authorize the conveyance) in writing and was of record, thus imparting notice to the purchasers and all concerned, the conveyance by Rising in trust for the payment of the debts of his firm cannot, as against Hodgdon, be upheld, unless the authority was so coupled with an interest in the property as to validate the conveyance made for the benefit of the agent.

It is claimed that the conveyance from Rising to Hodgdon, and the power of attorney back, were one and the same transaction, and were but parts of a scheme to defraud the creditors of Rising, who was in failing circumstances, and that the pretended conveyance was fraudulent and void, and as a sequence, no title ever passed from Rising to Hodgdon.

The circumstances would seem to lend plausibility to this theory of the object of the conveyance, but assuming it as true, we do not see how the result claimed ensues.

A conveyance for the purpose of defrauding creditors is valid and binding as between the parties, and as to all other persons except creditors of the grantor; and they are not here complaining.

So, too, a sale with the intent to defraud subsequent purchasers was, under the statute of frauds of 1850 (Stats. 1850, p. 266), fraudulent as against such purchasers for a valuable consideration and without notice, and as against such purchasers with notice if the grantee in the fraudulent conveyance was privy to the fraud.

A court of equity would in such cases, by direct proceedings instituted for such purpose, set aside and annul a fraudulent conveyance of this character.

A court of law, also, in a proper case, upon pleadings setting out the facts constituting the fraud, might remedy the wrong.

But in an action of ejectment, counting upon the legal

title, with no proper allegations to that end, such an inquiry is not permissible.

It is further contended that the power was executed for a valuable consideration, was by its very terms irrevocable, and was coupled with an interest, and that therefore the attorney could sell and convey at will to such persons, upon such terms, and for such consideration, as he saw fit.

1. The general rule is, that the principal may revoke the authority of his agent at his mere pleasure. (Story on Agency, sec. 462.)

2. Although the principal has expressly stipulated that the power shall be irrevocable, still, if the agent has no interest in its execution, and there is no valid consideration for the execution of such power, it is a "mere *nude pact*, and is deemed in law to be revocable at the will of the constituent, upon the principle that he who alone has an interest in the execution of an act is also entitled to control it." (Story on Agency, sec. 476.)

3. Where an authority or power is given for a valuable consideration, or is coupled with an interest, or is part of a security for the payment of money or the performance of some other lawful act, it is irrevocable, whether so expressed upon its face or not.

4. The death of the principal revokes a power to the agent by operation of law, except where coupled with an interest in the thing actually vested in the agent. (Story on Agency, sec. 489.)

5. In reference to what is meant by the term "a power or authority coupled with an interest," some confusion has been created by loose expressions to be found in cases either not well considered, or in which the point is not essential to a decision.

The question was elaborately considered and definitely settled by Chief Justice Marshall in *Hunt* v. *Rousmanier*, 8 Wheat. 174, in an opinion which seems to us to leave little room for later discussion.

The doctrine of that case is, that the term "a power coupled with an interest" means an interest in the subject-matter over or concerning which the power is to be exercised; that the interest must be in the thing itself.

"In other words, the power must be ingrafted on an estate in the thing."

It is not sufficient that the "interest" is in that which is to be produced by the exercise of the power, for in that case, as is well said by Chief Justice Marshall, they are never united.

"The power, to produce the interest, must be exercised, and by its exercise is extinguished. The power ceases when the interest commences, and therefore cannot, in accurate law language, be said to be coupled with it."

The doctrine of *Hunt* v. *Rousmanier, supra,* and of other cases on the question, as we understand them, require, in cases relating to real estate, that such an interest or estate shall pass to the agent as will entitle him to execute the power in his own name.

Unless thus vested with an estate in the subject-matter over which the power is to be exercised, it is not perceived how an agent could convey the estate of a dead man.

That which a man cannot do himself cannot be done by an agent in his name. (Story on Agency, sec. 488; *Barr* v. *Schroeder,* 32 Cal. 609.)

Testamentary powers, to be executed after the death of the testator, depend upon a different principle, and need not be considered here.

We conclude that, as no estate or title vested in Rising by virtue of the power conferred upon him, or so far as appears by the testimony, conceding it to have been admissible, it must follow:—

1. That his authority terminated with the death of Hodgdon, his principal, in 1862, and as a consequence, that the deed to Wade executed thereafter was absolutely void.

2. That as against his principal, Hodgdon, he had no right to execute a deed of trust to trustees for the payment of the debts of Rising, Casselli & Co.

Our next inquiry must be directed to the question of whether the trust deed executed by Rising to pay the debts of his firm was absolutely *void* and of no effect, or whether it conveyed title, and can stand until the subject of a direct attack to set it aside.

If the latter, we need not in this action at law, in which no equitable rights are set up, pursue the subject further.

It is said the acts of an agent in excess of his authority may be ratified by the principal; that where the principal, with a full knowledge of all the circumstances of the case, deliberately ratifies the acts, doings, or omissions of his agent, he thereby makes them his own, and will be bound as fully, to all intents and purposes, as if he had originally given him direct authority in the premises to the extent to which such acts, doings, or omissions reach. (Story on Agency, secs. 239 et seq.)

The same author states that at common law there is a distinction between the ratification of acts which are *void* and the ratification of acts which are *voidable*. In the former case, the ratification is inoperative and void for any purpose; in the latter, full validity is given to the acts until a judicial determination of their character.

He seems to think, however, that this distinction is more properly applicable to cases of contracts and acts which are illegal or immoral or against public policy; cases in which the acts being void ought not to be allowed to acquire any validity, since the same objections exist to the ratification as to the original transaction, and that in ordinary cases of agency, the acts of the agent without or in excess of authority may be validated by ratification. (*Taylor* v. *Robinson*, 14 Cal. 396; *Davidson* v. *Dallas*, 8 Cal. 227; *Dupont* v. *Wertheman*, 10 Cal. 354; *Ellison* v. *Jackson W. Co.*, 12 Cal. 542; *McCracken* v. *San*

*Francisco*, 16 Cal. 591; *Grogan* v. *San Francisco*, 18 Cal. 590; *Blen* v. *B. R. & A. Co.*, 20 Cal. 602; *Racouillat* v. *Sansevain*, 32 Cal. 376.)

This doctrine is referred to not because the record shows a ratification of the acts of the agent, but because it is frequently presented as illustrating the doctrine applicable to void and voidable transactions.

In *Benham* v. *Rowe*, 2 Cal. 387, it was held that where a sale was irregularly made under a power contained in a mortgage, and the bill filed by the mortgagor did not ask to have it set aside, such sale must stand.

Wharton in his work on Agency holds that "whenever an agent attempts to use his fiduciary powers for his own benefit, he will be liable to be arrested in the attempt by a court of equity." (Sec. 231.)  In "all those instances in which one party purporting to act in his fiduciary character deals with himself in his private and personal character without the knowledge of his beneficiary, as where a trustee or agent to sell sells the property to himself, such transactions are voidable at the suit of the beneficiary." (Pomeroy's Eq. Jur., sec. 957.)

The conclusion we reach from a review of the cases bearing on the subject is, that where a sale is made by an agent under a power authorizing him to sell and convey, and it appears upon the face of his deed when compared with the power that he has complied with the requirements of the latter, the legal title will pass to the grantee, and remain in him and those holding under him until set aside by a court of equity, notwithstanding the agent may have violated his duty to the principal by fraudulent practices which do not appear in the deed.

In other words, a sale and conveyance being authorized, the *modus* and objects thereof, except so far as they appear in the record, cannot be summarily examined and disposed of by testimony *dehors* the record in an action of ejectment without pleadings formulated for

such purpose, and with no object of setting aside the conveyance.

2. If an agent acts without and in excess of the authority conferred upon him, and such want of authority is apparent upon the face of the record, his attempted action is void, and a conveyance under such circumstances is not simply *voidable*, but absolutely *void*, and advantage may be taken of it by objection, in whatever court of proceedings it may be proffered as a basis of title.

Rising was fully authorized by the power of attorney from Hodgdon to sell and convey the demanded property to such persons and for such purposes and at such price as he saw fit, subject only to the law. He could not make a deed of gift of the property, or convey it to himself, or, what was the same thing, convey it in trust to Turner and Hort for the payment of his own debts and those of his copartners. In so doing, he violated a fundamental principle governing and controlling the acts and conduct of agents, and the object being patent on the face of the deed, when taken in connection with his letter of attorney, such deed was in excess of authority and void. (*Dupont* v. *Wertheman,* 10 Cal. 367; *Mott* v. *Smith,* 16 Cal. 537; *Meade* v. *Brothers,* 28 Wis. 693; *Bostwick* v. *Hardie,* 30 Ga. 836.)

This infirmity was, as we have stated, patent upon the record, and all parties dealing with the property took with notice of it. (*Hassey* v. *Wilkie,* 55 Cal. 525; *Wilson* v. *Castro,* 31 Cal. 435; *Brush* v. *Ware,* 15 Pet. 111.)

In justice to counsel in the cause, and in deference to the authors of the former opinion filed in the case, we ought to further notice the question raised upon the testimony of Clark, by which it is claimed to have been shown that the powers of Rising were enlarged so that his authority to convey the property could be upheld.

By section 1849 of the Code of Civil Procedure, it is provided that "where, however, one derives title to real property from another, the declaration, act, or omission

of the latter, while holding the title, in relation to the property is evidence against the former."

We do not understand that it was the intention of the legislature by this section to vary or alter the rules of evidence existing prior to its passage. By the preceding section, it had been provided that "the rights of a party cannot be prejudiced by the declaration, act, or omission of another, except by virtue of a particular relation between them; therefore proceedings against one cannot affect another."

In actions to set aside conveyances by which title passes, upon the ground of fraud, where the question is not as to the fact of conveyance, but the *animus* with which it was made, the declarations of parties are of course admissible to establish fraud.

So a deed absolute on its face may be shown by parol to have been intended as a mortgage; and other cases might be cited in which courts of equity look to the intent of the parties rather than to the form of their proceedings for the purposes of justice.

Here, however, the question is: Was parol testimony admissible to enlarge the power given and defined in a properly executed power of attorney, or to show that notwithstanding an absolute deed was made to Hodgdon, yet that Rising, his grantor, retained some interest in the property? Can this be shown in an action of ejectment,—an action at law in which no equitable relief is sought, and founded upon such pleadings as are usually met with in this class of cases?

In such an action, can it be shown that A, who presents a patent from the government to land, has declared such patent to mean something different from what is expressed in it, and thus defeat the title conveyed thereby? or that a power of attorney to A authorizing him to lease or repair was intended to empower, and therefore did empower, him to sell and convey an indefeasible title?

To our minds, the negative of these propositions is too apparent to need argument.

If we admit that the testimony of Clark was admissible under section 1849 of the Code of Civil Procedure, it does not follow that the facts to which he testified could defeat the operation of the deed from Rising to Hodgdon, or enlarge the powers of the former under his letter of attorney from the latter.

These effects cannot be accomplished by parol.

Were the rule otherwise, the tenure by which for wise purposes real estate is held and made to pass would depend, not upon the solemn acts of the parties, evidenced by formal writings, carefully designed to express their precise meaning, and intended to be as enduring as the earth to which they relate, but upon the uncertain memory of living witnesses, who detail second-handed the declarations of the actors.

Under such a rule, a power of attorney might be upheld by parol testimony in one generation, and in the next the legal structure reared upon and supported by it must fall for the want of the testimony in its support.

Section 1849 of the Code of Civil Procedure simply provides that the declarations, acts, or omissions of the former owner while holding the title in relation to the property are evidence.

This should not be construed to enlarge the class of cases in which before the code the declarations, acts, or omissions of the holder of the legal title were admissible at common law against himself, but rather to permit the declarations, acts, and omissions of the grantor to be introduced precisely as though he had retained the title and was a party to the action.

The scope of the testimony is not enlarged by the code.

Any declarations, acts, or omissions of the grantor while holding the title in relation to the property, and which could have been introduced against him while an

owner, may be introduced against his grantee,—nothing more.

It does not measure or prescribe the effect to be given to such testimony when introduced, or render it efficacious to prove any fact which could not before be established by like testimony.

" Declarations of persons in possession of land explanatory of the character of their possession are admissible in evidence. . . . . Possession is *prima facie* evidence of seisin in fee-simple; and the declarations of the possessor that he is tenant to another, it is said make most strongly against his own interest, and therefore are admissible. But no reason is perceived why every declaration accompanying the act of possession, whether in disparagement of the claimant's title or otherwise, qualifying his possession, if made in good faith, should not be received as part of the *res gestæ*, leaving its effect to be governed by other rules of evidence." (1 Greenl. Ev., sec. 109.)

Declarations by a person in possession in disparagement of his title are to be received, "leaving its effect to be governed by other rules of evidence."

One of these rules was, that real estate could not be conveyed by parol.

Another was, that an authorization or power to convey real estate could only be conferred by a written instrument.

A third was, that there could be no evidence of the contents of a writing except the writing itself, save in certain excepted cases, of which this is not one.

A fourth rule was, that parol testimony could not be received to curtail, enlarge, alter, or modify the effect of a written instrument. (*Conner* v. *Clark*, 12 Cal. 168; *Ruiz* v. *Norton*, 4 Cal. 355; S. C., 60 Am. Dec. 618; *Donahue* v. *McNulty*, 24 Cal. 411; *Osborn* v. *Hendrickson*, 7 Cal. 282; *Ward* v. *McNaughton*, 43 Cal. 159.)

The exception to this last rule, in case of ambiguity, mistake, etc., do not alter but rather demonstrate the rule.

Clark's testimony does not go to show that the deed from Rising to Hodgdon was a mortgage. But it is claimed that it shows that the deed from Rising to Hodgdon, and the power of attorney from Hodgdon to Rising, taken together, meant that though the property was conveyed, by Rising to Hodgdon, yet it really was not conveyed, and that Rising still continued to own it.

Could Rising thus by parol defeat his own deed? Could he say, I conveyed to Hodgdon, but the parol agreement was that the title should not pass. Could Rising so contradict his own deed and revest the property in himself by parol? If Mr. Rising could not do it, can Clark do it by repeating what Rising told him? Can the statute of frauds be wiped out, which says "no estate or interest in real property other than for leases for a term not exceeding one year, nor any trust or power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by his lawful agent thereunto authorized by writing." (Code Civ. Proc., sec. 1971.)

The foregoing section, though adopted since the transactions of which we speak, is but a transcript of the former law on the subject.

Certainly, one party to a written contract cannot at the time of its execution, or thereafter, destroy such written contract or deed by declaring *in the absence of the party with whom he had contracted or to whom he had conveyed* that his contract or deed was not intended to operate according to its tenor and effect.

Clark had no knowledge whether or not a consideration was paid by Hodgdon to Rising for the deed in question.

Our conclusion is, that the testimony of Clarke was not competent to prove in opposition to the writings

the facts claimed for it; and admitting it to have been introduced without objection (although such does not seem to be the case), yet it cannot be given an effect which the law provides can only be obtained by virtue of written instruments. Section 1849 of the Code of Civil Procedure makes the admissions, acts, and omissions of the holder of the title while an owner, relating to the property, admissible against his grantee. But it does not make his oral declarations competent to prove that which can only be established by a writing, or give to them an effect which can only be obtained by a deed, or make them admissible under an issue to which they are foreign.

In other words, it only makes them competent to prove what under the law such declarations, acts, or omissions are competent to prove, and in cases to which the evidence is pertinent.

*Sneed* v. *Woodward*, 30 Cal. 433, *McFadden* v. *Wallace*, 38 Cal. 58, *Phelps* v. *McGloan*, 42 Cal. 303, and *McFadden* v. *Ellmaker*, 52 Cal. 349, were all cases in which the evidence offered was competent to prove admissible facts.

Wharton on Evidence, at section 1156, lays down the doctrine that the admissions of a predecessor in title as a rule are admissible, and are compatible with "the rule that parol evidence is not admissible to vary dispositive writing." (*Jackson* v. *Spearman*, 6 Johns. 22; *Jackson* v. *Vosburg*, 7 Johns. 186.)

In *Kimball* v. *Morrell*, 4 Greenl. 371, it was said:—

"When the declarations of parties are admitted in evidence as a part of the *res gestæ*, it is because those declarations go to explain the true intent and meaning of the parties at the time. Now, the true intent and meaning of a deed, and the contents of that deed, are to be gathered from the deed itself. The language of the parties to it, whether used before or after or at the time of its execution, cannot be given in evidence to limit, restrain, or enlarge its meaning. The declara-

tions, therefore, of the parties to a deed as to its contents are no part of the *res gestæ.*"

In *Badger* v. *Story*, 16 N. H., 2d series, vol. 4, p. 171, it is said: "The grantor's declarations might also be given in evidence for other purposes. They could not be offered as part of the *res gestæ* to limit the terms of the deed itself as between the parties to it, and to show that it was to be something different from what it purported to be on the face of it."

In *Jackson* v. *Cary*, 16 Johns. 305, 306, it is said: "The evidence of declarations made by the defendant avail nothing, for although parol declarations of tenancy have been received with certain qualifications, parol proof has never yet been admitted *to destroy or take away* a title. To allow parol evidence to have effect would be introducing new and most dangerous species of evidence. The statute to prevent frauds and perjuries, which has been considered the *magna charta* of real property, avoids all estates created by parol, and all declarations of trust, excepting resulting trusts, regarding any lands, tenements, or hereditaments. Yet, in defiance of this statute, we are asked to divest the defendant of what appears to be a complete title to the premises by her parol declarations. This cannot be listened to."

*M'Crea* v. *Purmort*, 16 Wend. 473, is to the same effect.

In *Rhine* v. *Ellen*, 36 Cal. 371, it is held that the operative words of conveyance and the covenants in a deed cannot be contradicted by parol testimony.

In *Judson* v. *Malloy*, 40 Cal. 307, it was held that testimony which contradicted or tended to limit the operation of the deeds in evidence, one of which was executed to and another by the witness, should have been excluded if objected to.

These are but samples of a larger number of cases to which we have been referred, establishing the same doctrine, and from the result of which we conclude the court below did not err in excluding the declarations of Hodg-

don to Clark or to other parties, or of Rising to Nichols or others in April, 1853, or at any other time, as each and all of said declarations seem to have been offered for the purpose of giving to the deed and power of attorney an effect not competent to be proven by parol testimony.

The tax deed offered in evidence, executed by E. H. Washburn, tax collector, was properly excluded. (*Roberts* v. *Chan Tin Pen*, 23 Cal. 260; *French* v. *Edwards*, 13 Wall. 515; *Hewell* v. *Lane*, 53 Cal. 213.)

Upon the whole case as presented, we are of opinion the judgment and order appealed from should be affirmed.

FOOTE, C., and BELCHER, C. C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are affirmed.

THORNTON, J., concurred in the judgment.

Rehearing denied.